8:19-cv-191 (LEK/DJS)

# EXHIBIT A

**Village of Canton – ZBA**
**Request for Interpretation**

January 24, 2019

Applicant:  Jamie Sinclair of Christian Fellowship Centers of New York, Inc.
Request:  The change of use of 25 Court St. from restaurant to church
Code in question:   Canton Village Code Section 325-11 C-1 Retail Commercial District

**Decision:**

The Zoning Board of Appeals (ZBA or the board) of the Village of Canton, NY received a request to use 25 Court St. in the C-1 commercial district of the Village as a Church.  The applicant was denied by the Code Enforcement Officer of the Village of Canton and requested that the ZBA interpret the village code with regards to the use of 25 Court St. as a church.  With this interpretation, the board took into consideration the impact of having a church in the C-1 district.  The board used facts presented and the code to reach our decision. The board's decision was not swayed, influenced, or impacted by creed, religious philosophy, or belief structures.  The implications of parking, while discussed, were not used to make our decision.  The concern of property taxes, while discussed, was not a pertinent part of our decision and did not influence our vote.

In the village, the aim of the C-1 commercial district is to "delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole".  Churches are not stated allowable entities in this district.  After careful deliberation, the board believes that based on the village code a church is not an allowed use in the C-1 commercial district.   However, the applicant's argument focused on the legality of the code as it pertains to the Religious Land Use And Institutionalized Persons Act (RLUIPA).  Therefore, the board considered whether this code violates RLUIPA and if the code is fair to church gatherings.  Our deliberation and discussion focused on whether RLUIPA mandated that a church is an allowed use in the C-1 district.  The following are aspects of RLUIPA and what the board decided in each aspect.

*On Substantial Burden:*  During the meetings, it was clear that the CFC has been meeting within the village limits at other locations for several years.  The village code allows churches in three other districts (R-1, R-2, and B-1) within the village.   The board felt that the denial by the CEO does not impede the CFC's ability to gather and exercise their religious rights in the Village of Canton.

*On Discrimination and Exclusion:*  In the village of Canton there are three other districts that allow for churches.  Within the village boundaries, there are more than eight churches holding worship services. The board feels that the code does not discriminate against or exclude churches.

*On Equal Terms:*  The board discussed and debated this aspect for RLUIPA during several meetings.  The "equal terms" clause requires a comparison between the religious entity and a similarly situated secular entity.  The discussions distilled to the question of whether churches are treated less than equal to non-religious uses that have a similar impact on the C-1 district.  When looking at secular uses that have a similar impact on a zoning district, NY's Alcohol Beverage Control Law provided information.  According to state statute, *"No retail license for on-premises consumption shall be granted for any premises located on the same street or avenue and within two hundred feet (200') of a building occupied exclusively as a school, church, synagogue, or other place of worship."* (ABC Law Section 64)  In this case,



either a school or church would activate the ABC law and hinder the usage of surrounding properties.  In the C-1 district, are churches treated on less well than a secular use that would have similar impact to the district (e.g. a school)?   In the C-1 district, the code does not allow either churches or schools, and the other uses in the district do not hinder other allowed uses.  Therefore, the board decided that the village code does not treat churches less than equal compared to secular uses that would have the same impact proximate properties in the C-1 district.

**Summary:**

It is the decision of the board that the code enforcement officer interpreted the village code correctly. The board voted unanimously to deny the application to change the use of 25 Court St to a church.  The use was denied because a church is not an allowed use in the C-1 district of the Village of Canton, NY and the board believes the code is not creating a substantial burden on a church, discriminating against religion, or treating a church on less than equal terms.


Conrad Stuntz, ZBA Chair

# EXHIBIT B

Watertown   Ogdensburg   Massena   Lowville   Carthage   Malone   Oswego   NNY Business   NNY Living   NNY Ads   Mon., Feb. 4   ADV

Serving the communities of Jefferson, St. Lawrence and Lewis counties, New York
**In print daily. Online always.**

Home | Local | National | Sports | Obituaries | Features | Opinion | Page 2 | Calendar | Photos & Video | Archives | Contact & Help | Newsletters

# Canton Zoning Board postpones decision on church request to open office in former restaurant

Search...

By SUSAN MENDE
SMENDE@OGD.COM
PUBLISHED: TUESDAY, JANUARY 29, 2019 AT 12:37 AM
UPDATED: TUESDAY, JANUARY 29, 2019 AT 12:52 AM

A↕   🖨   ✉   Like   Share   Tweet

CANTON — Jamie Sinclair, pastor of Canton Christian Fellowship Center, will have to wait awhile longer to find out if he'll be allowed to open his office at the former Club restaurant, 25 Court St.

Members of the village Zoning Board of Appeals decided Monday night they wanted more time to consider issues that were raised during a 20-minute public hearing that drew about 15 people to the municipal building on a frigid cold night.

"I don't want to make a knee jerk reaction one way or the other," said ZBA Chairman Conrad Stuntz. "I think we need to think a little more and let it percolate."

The ZBA has 62 days to reach a decision.

Mr. Sinclair wants the ZBA to overturn a decision by Codes Enforcement Officer Jeffrey Murray, who denied his application to use the building for a church office while he continues to press for permission to have a full-fledged church operate there, where weekly services would be held.

"This is to explore some temporary options for us," Mr. Sinclair said. "Our long-term hope and vested interest is using the space as a church. We do feel we have a right to use the church without special exception and we're interested in continuing to pursue that if possible."

As the church's pastor, Mr. Sinclair said he would use the office to provide spiritual counseling to members of his congregation, including marital counseling, faith exploration, and other needs.

"It's our building now and we'd like to use it as a professional office. That could look like a lot of things," Mr. Sinclair said. "Part of pastoral duties are certainly officiating events and having services, things like weddings, funerals, weekly worship, things like that, but it also includes pastoral counseling and discipleship, so practices like meeting up with someone to pray with them, study the Bible, lay hands on them, praying for physical healing, addressing spiritual questions."

A professional office is an allowed use in the Commercial-1 district.

The CFC purchased the building Jan. 11 for $310,000.

## Related Stories

### ST. LAWRENCE
- Wells will not seek another term as sheriff
- Potsdam man charged with DWI
- Potsdam man charged with criminal mischief
- Waddington man charged with DWI
- North Lawrence man indicted for failing to register as sex offender

### ST. LAWRENCE COUNTY
- Suspects sought after shooting injures one in Ogdensburg
- Businessman has beef with some DPW workers' attitudes
- Paul Smith's looking to add students from closing Vermont school
- Clifton-Fine Hospital appoints new CEO
- It's still winter, but Ogdensburg's Pro Musica Chorus is singing the virtues of spring

### CANTON
- Canton Family Dollar to close at end of March
- Waddington Village Mayor Janet Otto-Cassada is running for County Clerk position
- Massena Volunteer Fire Department holding chicken barbecue fundraiser on Saturday
- Jury begins deliberations in Rivera rape trial, will continue Friday

- Request to convert Canton restaurant into church may go back to Planning Board

The activities for the office were scrutinized because the ZBA decided two weeks ago that churches aren't allowed in the village's Commercial-1 district, affirming Mr. Murray's decision.

Mr. Stuntz said there's a concern that letting the CFC open an office in the building would develop into more.

"There's a lot of fear. If the door opens it will be wedged and opened further," Mr. Stuntz said.

Four people spoke against allowing CFC to open an office in the building.

Morgan Hastings, a community member said, "I think it's a little sneaky to say I'm going to do this and minister this and do all these other things. These are all churchey duties. They're not really office related."

He said the CFC was asking not for equal treatment, but for special treatment.

Even though Mr. Sinclair said he doesn't plan to have his full congregation meet for services, resident Lynn Soulia said it sounds like the office activities mentioned closely resemble those held at a church.

"I have a problem that all this other stuff would be able to go on," she said. "There's no way any one is going to know what's going on there."

Diane Exoo, an attorney who resides in Canton, said she felt the CFC was trying to make an end run around zoning regulations.

"I think it's a very transparent end run. If you allow it, it's a very slippery slope," she said.

The code enforcement officer would likely be accused of religious harassment if he regularly checked on what activities were taking place inside the building, Mrs. Exoo said.

Nick Clark, a resident, said he also believed the CFC should have to follow the zoning code, using himself as an example.

"I wanted a 10-foot fence. Jeff told me I could only have a 6-foot fence," he said.

Linda Kenney asked whether CFC would be willing to sell the building.

"If we find a buyer, would they consider another location?" she asked.

Mr. Sinclair did not provide a response.

Uses allowed in the village's C-1 zone include: a business or professional office or studio, financial institutions, retail store, personal service shop, launderette, restaurant or tavern, theater, bowling alley, billiard or pool hall, hotel or motel, office equipment or business machine sales and service, printing shop, bakery or confectionary, radio, television, or household appliance sales or service, municipal or government service, museum, florist shop, antique sales, fraternal/social clubs/education/charitable, or philanthropic, convenience or grocery store without gas pumps, existing gas station, existing feed sale and related processing center, apartment units on the second or higher floor in the historic district, one- and two-family dwellings outside the historic district.

Commenting rules:
1. Stick to the topic of the article/letter/editorial.
2. When responding to issues raised by other commenters, do not engage in personal attacks or name-calling.
3. Comments that include profanity/obscenities or are libelous in nature will be removed without warning.

Violators' commenting privileges may be revoked indefinitely. By commenting you agree to our full Terms of Use.

# EXHIBIT C

Serving the communities of Jefferson, St. Lawrence and Lewis counties, New York
**In print daily. Online always.**

Home | Local | National | Sports | Obituaries | Features | Opinion | Page 2 | Calendar | Photos & Video | Archives | Contact & Help | Newsletters

# Request to convert Canton restaurant into church may go back to Planning Board

By SUSAN MENDE
SMENDE@OGD.COM
PUBLISHED: FRIDAY, FEBRUARY 1, 2019 AT 12:30 AM

A↕  🖨  ✉  [Like 0] [Share]   [Tweet]

Search...

CANTON — An attempt by an evangelical religious group to convert the former Club restaurant into a church may bounce back to the village Planning Board, which tabled the issue in December.

Jamie Sinclair, pastor of the Canton Christian Fellowship Center, said he has submitted an application to Code Enforcement Officer Jeffrey Murray seeking a special exception from the Planning Board to allow his church to meet at the 25 Court St. building that housed The Club before it closed in July.

However, Mr. Murray said Thursday he's uncertain if it's proper procedure to have the village Planning Board revisit the request. The Planning Board's next scheduled meeting is 7 p.m. Feb. 12 in the municipal building.

"I'm still trying to figure this whole thing out," Mr. Murray said Thursday. "We have to figure out how this proceeds. I'm still confused about what the proper procedure is. I'm waiting for people who are smarter than me to tell me what to do."

Instead of going back to the village Planning Board, he said the CFC may have to file an Article 78 court proceeding challenging the ZBA's decision not to allow the church to use the Court Street building for church services. The ZBA hasn't decided yet if the building can be used for Mr. Sinclair's office.

Village Attorney Gerald J. Ducharme said he needs to review Mr. Sinclair's application before commenting on whether going before the Planning Board was the proper step.

Mr. Sinclair said he assumes his request will be placed on the agenda for the Feb. 12 meeting.

"We were tabled in the December meeting until after the ZBA decision on the other request. The ZBA made a decision, so we should be back on the agenda ASAP," he said. At its Dec. 11 meeting, the village Planning Board decided not to rule on the application, instead forwarding the church's request to the village's Zoning Board of Appeals. Planning Board members said they wanted the ZBA to interpret the village zoning code to determine if a church should be allowed in the Commercial-1 district even though it's not on the list of allowed uses. The ZBA voted 5-0 on Jan. 16 against the CFC, agreeing that a church should not be allowed in a C-1 district. The

## Related Stories

### ST. LAWRENCE

- Wells will not seek another term as sheriff
- Potsdam man charged with DWI
- Potsdam man charged with criminal mischief
- Waddington man charged with DWI
- North Lawrence man indicted for failing to register as sex offender

### TOP STORIES

- Suspects sought after shooting injures one in Ogdensburg
- Paul Smith's looking to add students from closing Vermont school
- Sackets Harbor Central begins pre-school program, struggles to fill enrollment
- Clifton-Fine Hospital appoints new CEO
- The cost of driving 55 mph in snow and ice: effect of road salting on environment, property, human health

### VILLAGE GOVERNMENT

- Massena village trustees waive 10 percent penalty on water bills for furloughed federal workers
- Gouverneur village considers banning pet snakes after complaint lodged

CANTON

- Canton Family Dollar to close at end of March
- Waddington Village Mayor Janet Otto-Cassada is running for County Clerk position
- Massena Volunteer Fire Department holding chicken barbecue fundraiser on Saturday
- Request to convert Canton restaurant into church may go back to Planning Board

zoning code states the aim of a C-1 district is to "delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole."

Mr. Sinclair and his supporters argue that the church qualifies for a C-1 special exception based on wording in Section 325-11 of the code. The code states that "uses deemed similar" to those listed in the code are allowed by special exception.

He said the church is similar to "fraternal/social clubs/education/charitable or philanthropic," which is listed as an allowed use.

"It's very similar," Mr. Sinclair said Thursday.

John Collins, the Canton attorney who handled the CFC's real estate transaction to purchase The Club, has said he believes a church falls under all of those categories and therefore should be allowed to operate in the C-1 zone. The Christian Fellowship Centers of New York Inc. purchased the three-story building Jan. 11 for $310,000 prior to receiving the ZBA ruling.

At the Dec. 11 meeting, Planning Board member Nick Kocher told Mr. Sinclair the board's duties include looking at how granting a special exception impacts adjoining property owners. Allowing a church in a C-1 district may prevent parcels within 200 feet from obtaining a liquor license from the state Liquor Authority.

Planning Board Chairman Barry Walch said he thinks it's healthy to have both the Planning Board and the ZBA involved with reviewing the project and making decisions.

"It's good to have a process and I think it's good to have two boards that have similar, but not identical roles," he said. "We're working on the same project from a different perspective."

Commenting rules:

1. Stick to the topic of the article/letter/editorial.
2. When responding to issues raised by other commenters, do not engage in personal attacks or name-calling.
3. Comments that include profanity/obscenities or are libelous in nature will be removed without warning.

Violators' commenting privileges may be revoked indefinitely. By commenting you agree to our full Terms of Use.

# EXHIBIT D

☐ Watertown  ☐ Ogdensburg  ☐ Massena  ☐ Lowville  ☐ Carthage  ☐ Malone  ☐ Oswego  ☐ NNY Business  ☐ NNY Living  ☐ NNY Ads   Wed., Feb. 6   ADV

Serving the communities of Jefferson, St. Lawrence and Lewis counties, New York
**In print daily. Online always.**

Home | Local | National | Sports | Obituaries | Features | Opinion | Page 2 | Calendar | Photos & Video | Archives | Contact & Help | Newsletters

Search...

# Village Planning Board will review church's request Monday night

By SUSAN MENDE
SMENDE@OGD.COM
PUBLISHED: TUESDAY, FEBRUARY 5, 2019 AT 3:21 PM

A↕   🖨   ✉   ⬚ Like 0   ⬚ Share   Tweet

CANTON — A request by the Canton Christian Fellowship Center to convert the former Club restaurant/tavern into a church is scheduled to be reviewed Monday night by the village Planning Board, but the board's chairman said it's unlikely the church will be successful.

Planning Board Chairman Barry Walch said he believes the board will deny Mr. Sinclair's request to use the 25 Court St. building as a place of worship because "church" is not listed as an allowed use or as a special exception use in the village's Commercial-1 district. The Planning Board is scheduled to meet at 7 p.m. in the municipal building, 60 Main St.

"We can only give a special exception to things that are listed. So, we'll probably say no," Mr. Walch said. "We have to say no to anything that is truly a church."

Last week, Jamie Sinclair, pastor of the Canton CFC, submitted an application to Codes Enforcement Officer Jeffrey Murray seeking a special exception that would allow the former Club to be used for church services. He argues that the church qualifies for a C-1 special exception based on wording in Section 325-11 of the code. The code states that "uses deemed similar" to those listed in the code are allowed by special exception.

Mr. Sinclair said the church is similar to "fraternal/social clubs/education/charitable or philanthropic," which is listed as an allowed use. John Collins, the Canton attorney who handled the CFC's real estate transaction to purchase The Club, has said he believes a church falls under all of those categories and therefore should be allowed to operate in the C-1 zone.

"It's very similar," Mr. Sinclair said.

But, Mr. Walch said places of worship are not the same as places that provide charitable acts, such as the food pantry on Main Street operated by the not-for-profit Canton Church & Community Program.

"There's a big difference between worship and acts such as giving out food," he said.

Mr. Sinclair also believes that based on Section 325-123.b in the code, the Planning Board is required to hold another public hearing before deciding on the special exception request. That would require 10 days advance notice in the newspaper which has not been done.

"I think the code is pretty clear," Mr. Sinclair said.

## Related Stories

### ST. LAWRENCE
- Undersheriff announces bid for St. Lawrence County Sheriff's seat
- Open house scheduled Thursday at women's halfway house in Canton
- Jeremy P. Kearns Memorial Snowmobile Run scheduled for Saturday at Cedar View Golf Club
- Warm-up closes Ice Palace — Volunteers hope to reopen it Friday
- Caroline Street residents worried about recent shooting in Ogdensburg

### LATEST NEWS
- Pence says government shutdown wasn't a mistake
- Winter weather advisory in effect for NNY; freezing rain to affect commute
- Woman transported to hospital after Bradley Street crash
- North Pole is mysteriously moving, and U.S. government finally caught up
- No 'material impact' of foreign interference in 2018 elections, Trump administration finds

### CANTON
- Hogansburg man pleads guilty to attempted burglary on eve of trial

- Village Planning Board will review church's request Monday night
- Horrocks pleads not guilty to Canton Dairy Queen burglary, arson
- St. Lawrence County jail security upgrades will be paid in full this year

## VILLAGE GOVERNMENT

- Request to convert Canton restaurant into church may go back to Planning Board

## RELIGIOUS INSTITUTIONS

- Request to convert Canton restaurant into church may go back to Planning Board

The village Zoning Board of Appeals held a public hearing on Nov. 28 that drew about 100 people to the municipal building, including many community members who spoke against the church's plans and few who spoke out in support.

Mr. Walch said he's is seeking the advice of Village Attorney Gerald Ducharme regarding how to proceed and whether another public hearing is required.

"We have been going round and round on this," Mr. Walch said. "Our attorney is involved and he's going to help us make a decision on what we should do. He will advise us."

In October, the Planning Board passed the matter to the ZBA asking for an interpretation of the village zoning code to determine if a church should be allowed in the C-1 district. The ZBA voted 5-0 on Jan. 16 against the CFC, agreeing that a church should not be allowed in a C-1 district. The zoning code states the aim of a C-1 district is to "delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole."

The Christian Fellowship Centers of New York Inc. purchased the three-story building Jan. 11 for $310,000 prior to receiving the ZBA ruling.

Mr. Sinclair and his supporters have also argued that the village's zoning code may be in violation of the federal Religious Land Use and Institutionalized Persons Act. One option is filing an Article 78 legal proceeding in state Supreme Court that challenges decisions made by Mr. Murray, the Planning Board and the ZBA.

Commenting rules:

1. Stick to the topic of the article/letter/editorial.
2. When responding to issues raised by other commenters, do not engage in personal attacks or name-calling.
3. Comments that include profanity/obscenities or are libelous in nature will be removed without warning.

Violators' commenting privileges may be revoked indefinitely. By commenting you agree to our full Terms of Use.

# EXHIBIT E

# Chapter 325. Zoning

# Article II. Establishment of Districts; Zoning Map; Application

# § 325-4. Districts established.

[Amended 8-3-1987 by L.L. No. 1-1987; 6-27-2006 by L.L. No. 3-2006]
For the purpose of this chapter, the Village of Canton is divided into the following districts:

| | |
|---|---|
| R-1 | Residential District - One-Family |
| R-2 | Residential District - General |
| U-1 | University District |
| B-1 | Business District |
| C-1 | Retail Commercial District |
| C-2 | General Commercial District |
| C-3 | Commercial Park District |
| C-4 | Commercial/Light Industrial District |
| CH | Commercial Historic District |
| M-1 | Manufacturing District |
| O-S | Open Space District |
| P-R | Planned Residence District (planned development district) |
| P-C | Planned Commercial District (planned development district) |
| P-M | Planned Manufacturing District (planned development district) |

# EXHIBIT F

# Chapter 325. Zoning

# Article III. Use Regulations

# § 325-10. B-1 Business District.

A.  Purpose. The purpose of the B-1 Business District is to delineate an area which is appropriate for public or private offices, churches, institutions and medium-density residential uses by virtue of the relationship to the central business district, major streets, present uses and character of development.

B.  In the B-1 Business District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:
[Amended 6-27-2006 by L.L. No. 5-2006]

  (1)  Uses permitted in the B-1 District:

    (a)  One- or two-family dwellings.

    (b)  Nursing home.

    (c)  Municipal or government building.

    (d)  Public library or museum.

    (e)  Fraternal or social club or lodge.

    (f)  Business or professional office or studio (not to include veterinary).

    (g)  Charitable or philanthropic institution.

    (h)  Funeral home.

    (i)  Doctor/medical office.

    (j)  Church or religious institution.

    (k)  Personal service shop, such as, for example, a beauty shop or barbershop.

    (l)  Radio, television, or household appliance service and repair.

    (m)  Plumbing, heating or cabinet shop.

    (n)  Florist shop or greenhouse.

    (o)  Antique sales and service.

    (p)  Coffee house and related food service.

(q)   Accessory buildings or uses.

(2)   Uses permitted in the B-1 District by special exception of the Village Planning Board:

(a)   Residential condominium, by conversion of an existing structure.

(b)   Fraternity or sorority house.

(c)   Boardinghouse or rooming house.

(d)   University or college theme or group house.

(e)   Other group dwelling.

(f)   Public or private school.

(g)   Parish house or convent.

(h)   Uses deemed similar to the uses otherwise permitted in the B-1 District.

# EXHIBIT G

# Chapter 325. Zoning

# Article III. Use Regulations

# § 325-8. R-1 and R-2 Residential Districts.

[Amended 6-27-1984 by L.L. No. 9-1984; 5-20-2002 by L.L. No. 3-2002; 6-27-2006 by L.L. No. 4-2006]

A.  Purpose. The purpose of the residential districts is to:

   (1)  Delineate those areas where predominantly residential development has occurred or will be likely to occur;

   (2)  Preserve and upgrade the character of residential areas by requiring standards of land use and lot and building bulk and size which accurately reflect existing and potential development;

   (3)  Protect the integrity and aesthetic appeal of residential areas by prohibiting the intermixture of residential and incompatible nonresidential uses;

   (4)  Protect residential areas, as far as possible, from the consequences of heavy traffic and through traffic;

   (5)  Provide for the appropriate location of those educational, religious and similar facilities that may serve the needs of nearby residents;

   (6)  Conserve the value of land and buildings and thereby protect and enhance the Village's tax base and revenues.

B.  R-1 Residential District - One-Family. In the R-1 Residential District (One-Family), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

   (1)  Uses permitted in the R-1 District:

      (a)  One-family dwelling.

      (b)  Public park or playground.

      (c)  Existing farm. (No farm or farm use other than that which presently exists within the zone as of the effective date of this provision shall be permitted within the R-1 District.)

      (d)  Accessory building or use.

   (2)  Uses permitted in the R-1 District by special exception of the Village Planning Board:

      (a)  Accessory apartment, as defined in, and in compliance with, Article **II** of Chapter **248** of the Municipal Code of the Village of Canton.

      (b)  Public, private or parochial school, other than a college or university.

(c) College or university buildings or grounds, but not to include dormitories, student housing, fraternity houses, sorority houses, theme house, or other group dwelling.

(d) Church or religious institution.

(e) Parish house or convent.

(f) Customary home occupation.

(g) Uses deemed similar to the uses otherwise permitted in the R-1 District (not to include farm uses, which are permitted only to the extent that they exist in the R-1 District as of the effective date of this provision but which are not otherwise permitted).

C.   R-2 Residential District - General. In the R-2 Residential District (General), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

(1) Uses permitted in the R-2 District:

(a) Uses permitted within the R-1 Residential District without special exception (but not to include the farm use presently existing in the R-1 District).

(b) Two-family dwelling.

(c) Multiple-family dwelling.

(d) Residential condominium.

(e) Apartment housing cooperative.

(f) Townhouse.

(g) Conversion of existing use as a residential condominium, housing apartment cooperative, or townhouse.

(h) Accessory building or use.

(2) Uses permitted in the R-2 District by special exception of the Village Planning Board:

(a) Accessory apartment, as defined in, and in compliance with, Article **II** of Chapter **248** of the Municipal Code of the Village of Canton.

(b) Public, private or parochial school.

(c) Church or religious institution.

(d) Parish house or convent.

(e) Customary home occupation.

(f) Nursing home and adult daycare facility.

(g) Nursery school and children's day-care center.

(h) College or university building or grounds, but not to include dormitories.

(i) University or college theme or group house or fraternity or sorority house, but not to include a dormitory.

(j)    Rooming house or boardinghouse, or other group dwelling, but not to include a dormitory.

(k)    Uses deemed similar to the uses otherwise permitted in the R-2 District.

ZONING

*325 Attachment 1*

**Village of Canton**

**Schedule of Use, Area and Height Regulations**
**R-1 Residential District**
**[Amended 3-19-2018]**

| Districts | Principal Permitted Uses (See Article III, Use Regulations, for complete list) | Special Exceptions | Minimum Lot Size Area (sq. ft.) | Minimum Lot Size Width (ft.) | Lot Coverage (maximum percent) | Building Height (maximum) Stories | Building Height (maximum) Feet | Yard Dimensions (minimum in feet) Front | Yard Dimensions (minimum in feet) Side One | Yard Dimensions (minimum in feet) Side Total | Yard Dimensions (minimum in feet) Rear |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
| **R-1 Residential** | One-family dwelling | | 12,500 | 100 | 20 | 2 1/2 | 35 | 30 | 10 | 25 | 50 |
| | Public park or playground | | | | | | | | | | |
| | Existing farm | | 10 acres | 200 | | | | | | | |
| | Accessory building or use | | | | | | | | | | |
| | | Accessory apartment | | | | 1 1/2 | | | | | |
| | | Public, private OR parochial school | 5 acres | 500 | 20 | 2 | 30 | 100 | 100 | 200 | 200 |
| | | College or university buildings or grounds | 12,500 | 100 | 20 | 2 1/2 | 35 | 30 | 10 | 25 | 50 |
| | | Church or religious institution | 3 acres | 300 | 25 | | | | | | |
| | | Parish house or convent | 12,500 | 100 | 20 | 2 1/2 | 35 | 100 | 100 | 200 | 200 |
| | | Customary home occupation | | | | | | | | | |
| | | Uses deemed similar by CEO and Planning Board | | | | | | | | | |

11 - 01 - 2018

325 Attachment 1:1

CANTON CODE

## Schedule of Use, Area and Height Regulations
### R-2 Residential District
[Amended 3-19-2018]

| Districts (1) | Principal Permitted Uses (See Article III, Use Regulations, for complete list) (2) | Special Exceptions (3) | Minimum Lot Size — Area (sq. ft.) (4) | Minimum Lot Size — Width (ft.) (5) | Lot Coverage (maximum percent) (6) | Building Height (maximum) — Stories (7) | Building Height (maximum) — Feet (8) | Yard Dimensions (minimum in feet) — Front (9) | Yard Dimensions — Side One (10) | Yard Dimensions — Side Total (11) | Yard Dimensions — Rear (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| R-2 Residential | R-1 Residential District uses without special exception | | 10,000/DU | 75 | 25 | 2 1/2 | 35 | 25 | 10 | 25 | 50 |
| | Two-family dwelling | | 7,500/DU | 80 | 25 | 2 1/2 | 35 | 25 | 10 | 25 | 50 |
| | Multiple-family dwelling | | 4,000/DU | 100 | 25 | 2 1/2 | 35 | 40 | 15 | 30 | 50 |
| | Residential condominium | | | | | | | | | | |
| | Apartment housing cooperative | | | | | | | | | | |
| | Townhouse | | | | | | | | | | |
| | Conversion of existing use as a residential condominium, housing apartment cooperative or townhouse | | 4,000/DU | 100 | 25 | | | 40 | 15 | 30 | 50 |
| | Accessory building or use | | | | | 1 1/2 | | | | | 15 |
| | | Accessory apartment | | | | | | | | | |
| | | Public, private or parochial school | 5 acres | 500 | 20 | 3 | | 100 | 100 | 200 | 200 |
| | | Church or religious institution | 3 acres | 300 | 25 | | 30 | 100 | 100 | 200 | 200 |
| | | Parish house or convent | 12,500 | 100 | 20 | 2 1/2 | 35 | 30 | 10 | 25 | 50 |
| | | Customary home occupation | | | | | | | | | |
| | | Nursing home and adult daycare facility | 25,000 | 125 | 25 | 2 1/2 | 35 | 30 | 25 | 50 | 50 |
| | | Nursery school or children's day-care center | 20,000 | 125 | 25 | 2 1/2 | 35 | 30 | 25 | 50 | 100 |
| | | College or university buildings or grounds | 12,500 | 100 | 20 | 2 1/2 | 35 | 30 | 10 | 25 | 50 |
| | | University or college theme or group house, fraternity or sorority | 25,000 | 125 | 20 | 2 1/2 | 25 | 30 | 10 | 25 | 50 |

# EXHIBIT H

# Chapter 325. Zoning

# Article III. Use Regulations

# § 325-11. C-1 Retail Commercial District.

A.  Purpose. The purpose of the C-1 Retail Commercial District is to:

    (1)  Delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole.

    (2)  Encourage new development in the central business district by providing for public and commercial parking areas for businesses and patrons of the district.

B.  In the C-1 Retail Commercial District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:
[Amended 6-27-2006 by L.L. No. 6-2006]

    (1)  Uses permitted in the C-1 District:

        (a)  Financial institutions.

        (b)  Retail store.

        (c)  Personal service shop.

        (d)  Launderette.

        (e)  Restaurant or tavern.

        (f)  Theater.

        (g)  Bowling alley, billiard or pool hall.

        (h)  Hotel or motel.

        (i)  Office equipment or business machine sales and service.

        (j)  Printing shop.

        (k)  Bakery or confectionery.

        (l)  Radio, television or household appliance sales or service.

        (m)  Municipal or governmental building.

        (n)  Museum.

        (o)  Business or professional office or studio.

(p)   Florist shop.

(q)   Anitque sales.

(r)   Fraternal/social clubs/education/charitable or philanthropic.

(s)   Convenience or grocery store without gas pumps.

(t)   (Reserved)[2]

   [2]   Editor's Note: Former Subsection B(1)(t), regarding existing gas stations, was repealed 1-31-2011 by L.L. No. 2-2011.

(u)   Existing feed sale and related processing center. (No feed sale or processing center use other than that which presently exists as of the effective date of this provision shall be permitted within the C-1 District.)

(v)   Apartment units located on the second or higher floors in buildings located within the Canton Historic District.
[Amended 1-18-2011 by L.L. No. 1-2011]

(w)   One- and two-family dwellings located outside the Canton Historic District.
[Amended 1-18-2011 by L.L. No. 1-2011]

(2)   Uses permitted in the C-1 District by special exception of the Village Planning Board:

(a)   Group dwelling, not located within the Canton Historic District.
[Amended 1-18-2011 by L.L. No. 1-2011]

(b)   Residential condominiums, with such use to be located on the second or higher floors of buildings in the Canton Historic District.
[Amended 12-30-2008 by L.L. No. 6-2008]

(c)   Fuel pumps as part of the operation of a convenience or grocery store.
[Added 1-31-2011 by L.L. No. 2-2011[3]]

   [3]   Editor's Note: This local law also provided for the redesignation of former Subsection B(2)(c) as B(2)(d).

(d)   Uses deemed similar to the uses otherwise permitted in the C-1 District (not to include feed sale and related processing centers, which are permitted only to the extent that they exist in the C-1 District as of the effective date of this provision, but which are not otherwise permitted).
[Amended 1-31-2011 by L.L. No. 2-2011]

[1]   Editor's Note: Former § 325-11, B-2 Business/Commercial District, was repealed 6-27-2006 by L.L. No. 5-2006. Local Law No. 6-2006, adopted 6-27-2006, provided for the renumbering of former § 325-12, C-1 Retail Commercial District, as § 325-11; former § 325-13, C-2 General Commercial District, as § 325-12; and former § 325-14, C-3 Commercial Park District, as § 325-13.

# EXHIBIT I

☐ Watertown  ☐ Ogdensburg  ☐ Massena  ☐ Lowville  ☐ Carthage  ☐ Malone  ☐ Oswego  ☐ NNY Business  ☐ NNY Living  ☐ NNY Ads    Mon., Feb. 4    ADV

Serving the communities of Jefferson, St. Lawrence and Lewis counties, New York

**In print daily. Online always.**

Home | Local | National | Sports | Obituaries | Features | Opinion | Page 2 | Calendar | Photos & Video | Archives | Contact & Help | Newsletters

Search...

# Village of Canton advised by attorney to revise zoning code in wake of flap with church

By SUSAN MENDE
SMENDE@OGD.COM
PUBLISHED: THURSDAY, JANUARY 24, 2019 AT 12:30 AM
UPDATED: THURSDAY, JANUARY 24, 2019 AT 9:01 AM

A↑↓  🖨  ✉    Like 👍    Share    Tweet

CANTON — Village trustees may hire a land use specialist to help revise the village's zoning code which has come under scrutiny in recent months in connection with a church's attempt to operate in a former downtown restaurant that's in a commercial zone.

"Certainly, if anything, the most recent ZBA issue has brought to the fore is that things can be looked at in different ways," Village Attorney Gerald J. Ducharme told trustees Tuesday night. "The current zoning could use a lot more clarity and a lot more definitions."

Mr. Ducharme said if trustees proceed with revising the zoning code, they may also want to enact a temporary moratorium on the issuance of building or use permits by Code Enforcement Officer Jeffrey Murray. A local law would have to be passed that would halt Mr. Murray from issuing permits for a specified time period, likely six months to a year.

The moratorium could tie into a new Canton Comprehensive Plan that's being developed. The plan is supposed to serve as a road map for the future of the town of Canton and the villages of Canton and Rensselaer Falls.

"Many times when you do or update your comprehensive plan, a key part of that is whether the zoning that's in place is consistent with what your plan is or whether we need to change it or refine it in any way," Mr. Ducharme said. "That's part of the process for many communities working on a comprehensive plan. When you get to the part when you're going to look at zoning it's not unreasonable to think that you might authorize a moratorium on the issuance of any new building permits."

Mayor Michael E. Dalton said he agrees that the village needs to review its existing zoning code, which has not had major changes in more than a decade.

"Over the past year, several things have come up that I think we need to take a step back and look at with our zoning," he told trustees. "The comp plan is starting to come to an end and this is the time to be thinking about these things."

Canton Economic Development Director Leigh Rodriguez said communities are legally required to match their zoning codes with their comprehensive plans.

## Related Stories

### ST. LAWRENCE
- Wells will not seek another term as sheriff
- Potsdam man charged with DWI
- Potsdam man charged with criminal mischief
- Waddington man charged with DWI
- North Lawrence man indicted for failing to register as sex offender

### TOP STORIES
- Sackets Harbor Central begins pre-school program, struggles to fill enrollment
- Suspects sought after shooting injures one in Ogdensburg
- Paul Smith's looking to add students from closing Vermont school
- Clifton-Fine Hospital appoints new CEO
- The cost of driving 55 mph in snow and ice: effect of road salting on environment, property, human health

### VILLAGE GOVERNMENT
- Request to convert Canton restaurant into church may go back to Planning Board
- Massena village trustees waive 10 percent penalty on water bills for furloughed federal workers

- Gouverneur village considers banning pet snakes after complaint lodged

CANTON
- Canton Family Dollar to close at end of March
- Waddington Village Mayor Janet Otto-Cassada is running for County Clerk position
- Massena Volunteer Fire Department holding chicken barbecue fundraiser on Saturday
- Jury begins deliberations in Rivera rape trial, will continue Friday
- Request to convert Canton restaurant into church may go back to Planning Board

"By law, your zoning and your code have to follow what's in your plan. All municipalities are going to have to make any necessary adjustments after adopting that plan," she said.

Mr. Ducharme said a moratorium could also temporarily halt the village planning board from considering any requests for special exception uses. It could also delay the zoning board of appeals from considering any requests for use variances.

"If you were going to do that, I think you'd want to do that when you were pretty far along in the comprehensive plan process. Moratoriums should not be open-ended. They should not be particularly long," he said. "Moratoriums of up to six months have been considered reasonable for this purpose, possibly up to a year depending on what the specific issues you're dealing with as part of your comprehensive plan and zoning revision."

A public hearing would have to be held before a moratorium were enacted. Also, the county and village planning boards would be asked for input because the moratorium would be village-wide and cover all of the zones, Mr. Ducharme said.

"Case law has been very clear that moratoriums in conjunction with comprehensive plans are allowed. I would encourage you to think about that, about authorizing me to draft a local law," Mr. Ducharme said.

He said the zoning revisions can be handled by a village board of trustees, village planning board members or a committee that includes members from both boards.

Trustee Carol Pynchon said she'd feel more comfortable if the village or the town and the village hired a land use specialist to assist with the zoning review and potential changes. She said she's not interested in serving on a zoning review committee.

"I don't know exactly how much it would cost, but I don't think it would be a huge ticket," she said.

Trustee Beth Larrabee said she supported the idea, but she's also concerned about the impact a moratorium could have on the community's economic development.

The village's zoning code was last revised in 2006 and needs clarification, the attorney said.

"A lot of the terms we use in the code are not defined by the code itself," Mr. Ducharme said.

The village ZBA recently upheld a decision made by Code Enforcement Officer Jeffrey Murray to deny Canton Christian Fellowship Center a use permit to operate the former Club restaurant at 25 Court St. as a church. The CFC's application was rejected because the church is not listed as an allowed use in the village's Commercial-1 zone.

The church's pastor, Jamie Sinclair, and his supporters argue that although churches aren't specifically listed, it qualifies because the zone allows educational, philanthropic, charitable and social organizations.

Mr. Ducharme said he's concerned about some of the uses allowed in various zones through special exception permits.

"I think we need to consider whether or not some of those uses really are appropriate in some of the zones where they exist," he said. "A special exception is recognized as an allowed use, as compatible for that zone. It just requires a little more oversight by the planning board as opposed to being automatically approved by the code enforcement officer."

Village trustees may also want to consider which zones are adjacent to each other and whether buffers, such as fences, should be put in place to separate zones.

"For instance you have a business zone that's bordered almost entirely by residential zones, yet some of the uses allowed in a business zone by special exception may not be too neighborly in a residential corridor," Mr. Ducharme said. "The code should be reviewed periodically to see what changes need to be made."

Commenting rules:
1. Stick to the topic of the article/letter/editorial.
2. When responding to issues raised by other commenters, do not engage in personal attacks or name-calling.
3. Comments that include profanity/obscenities or are libelous in nature will be removed without warning.