# EXHIBIT A

# ARTICLE I

*Village of Canton, NY*
*Monday, February 18, 2019*

# Chapter 325. Zoning

# Article I. Title; Purpose; Definitions

## § 325-1. Title.

[Amended 6-27-2006 by L.L. No. 1-2006]
This chapter shall be known and may be cited as the "Village of Canton Zoning Law."

## § 325-2. Purpose.

[Amended 6-27-2006 by L.L. No. 1-2006]
The provisions of this chapter shall be held to be the minimum requirements adopted to promote the health, safety and general welfare of this community. Such requirements are deemed necessary for the following purposes:

A.  To protect the character and maintain the stability of residential, university, business, commercial, and manufacturing areas within the Village and to promote the orderly and beneficial development of such areas.

B.  To regulate the intensity of use of zoning lots, to determine the area of open spaces surrounding buildings necessary to provide adequate light and air, privacy, and convenience of access to property, and to protect the public health.

C.  To establish building lines and to regulate the location of buildings designed for residential, university, business, commercial, manufacturing or other uses within such lines.

D.  To fix reasonable standards to which buildings or structures shall conform.

E.  To prohibit uses, buildings or structures that are incompatible with the character of development or the permitted uses within specified zoning districts.

F.  To regulate additions to and alterations or remodeling of existing buildings or structures, as would not comply with the restrictions and limitations imposed hereunder.

G.  To limit congestion in the public streets and so protect the public health, safety, convenience and general welfare by providing for off-street parking of automobiles and for the loading and unloading of commercial vehicles.

H.  To provide protection against fire, explosion, noxious fumes, and other hazards in the interest of the public health, safety, comfort and the general welfare.

I. To conserve the taxable value of land and buildings throughout the Village.

# § 325-3. Word usage and definitions.

For the purposes of this chapter, certain terms or words used herein shall be interpreted as follows:

A. Word usage.

(1) Words used in the present tense shall include the future. The singular number includes the plural, and the plural the singular.

(2) The word "person" includes a corporation as well as an individual.

(3) The word "lot" includes the word "plot" or "parcel."

(4) The word "building" includes the word "structure."

(5) The word "used" or "occupied" as applied to any land or building shall be construed to include the words "built, arranged or designed to be used or occupied."

(6) The word "shall" is mandatory.

B. Definitions.

**ACCESSORY BUILDING**
A building subordinate to the principal building on a lot and used for purposes customarily incidental to those of the principal building.

**ACCESSORY USE**
A use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.

**ALLEY**
A serviceway which affords a secondary public means of vehicular access to abutting property.

**ALTERATION**
As applied to a building or structure, a change or rearrangement in the structural parts, or in the entrance and exit facilities, or an enlargement, whether by extending on a side or by increasing in height, or the moving from one location or position to another.

**APARTMENT HOUSING COOPERATIVE**
Includes property and buildings, including a multi-unit building, buildings, or group of buildings, whether or not attached to each other, with two or more units, created, owned or leased, and administered as a cooperative by a corporation. Such a corporation shall be formed pursuant to the provisions of New York Cooperative Corporations Law and any amendment thereto for the purpose of providing housing on a cooperative basis to stockholders who shall be entitled, solely by reason of their ownership of stock in the corporation, to occupy for dwelling purposes, under proprietary leases, apartments in said building or buildings.
[Added 5-20-2002 by L.L. No. 3-2002]

**AUTO WASH**
A building or portion thereof, the use of which is devoted to the washing of automobiles, including, but not limited to, one of the following types:

(1)  Conveyor type: an auto-wash facility where automobiles progress through the washing process pulled by an electrically operated chain conveyor or by some means other than their own power.

(2)  Drive-through type: an auto-wash facility where automobiles are driven through the washing process under their own power.

(3)  Self-service type: an auto-wash facility where automobiles are washed by the drivers of the automobiles using machinery provided by the manager of the facility.

**AUTO WRECKING**
The dismantling or disassembling of used motor vehicles or the storage, sale, salvaging or dumping of dismantled, partially dismantled, obsolete or wrecked motor vehicles or their parts. As used herein, the term "vehicle" shall mean passenger-type automobile, truck, tractor-truck, trailer, bus, motorcycle, snowmobile or other vehicle, however propelled, as well as tractors, bulldozers, machinery and similar equipment.

**BASEMENT**
A space of full-story height partly below grade and having at least half of its clear floor-to-ceiling height above the average grade of the adjoining ground and which is not designed or used primarily for year-round living accommodations.

**BUILDING**
Any roofed structure intended for the shelter, housing or enclosure of persons, animals or property. When a building is divided into separate parts extending from the ground up, each part so divided is deemed a separate building.

**BUILDING AREA**
The total ground floor area of a principal building and accessory buildings exclusive of uncovered porches, parapets, steps and terraces.

**BUILDING COVERAGE**
That area of the lot or plot covered by a building.

**BUILDING, DETACHED**
A building surrounded by open space on all sides on the same lot.

**BUILDING FLOOR AREA**
The sum of the gross horizontal area of the several floors of a building and its accessory buildings on the same lot, including basement areas devoted to residential use and the area of bays, dormers, roofed porches and roofed terraces. All dimensions shall be measured between exterior faces of walls.

**BUILDING HEIGHT**
The vertical distance measured from the established grade at the curb; or if no grade has been officially established at the curb, measured from the average level of the finished ground surface across the front of the building to the highest point of

the roof for flat roofs, to the deck line of mansard roofs and to the mean height between eaves and ridge for gable, hip and gambrel roofs.

**BUILDING LINE**
A line established by law or by agreement, usually parallel with a property line, beyond which a structure may not extend.

**BUILDING, PRINCIPAL**
A building in which the main use of the lot is conducted.

**CANOPY**
A roof free of enclosing walls over an entrance to a building or structure, or over a fuel pump island. Said roof may be free standing or attached to the building or structure.
[Added 1-31-2011 by L.L. No. 4-2011]

**CELLAR**
That space of a building that is partly or entirely below grade, which has more than half of its height, measured from floor to ceiling, below the average established curb level or finished grade of the ground adjoining the building.

**COFFEE HOUSE**
An informal restaurant primarily offering coffee, tea, and other beverages and where light refreshments and limited-menu meals may also be sold.
[Added 6-27-2006 by L.L. No. 2-2006]

**DAYS**
Refers to calendar days unless otherwise stated.
[Added 8-21-2000 by L.L. No. 11-2000]

**DUMP**
A plot of land or part thereof used primarily for the disposal by abandonment, dumping, burial, burning or any other means or for whatever purpose of garbage, sewage, trash, refuse, junk, discarded machinery, vehicles or parts thereof or waste material of any kind.

**DWELLING, GROUP**
A building or a portion thereof with sleeping and living accommodations for four or more persons who are not a family, used or occupied as a club, dormitory, fraternity or sorority house, boardinghouse or rooming house, or other transient use, but not as a tourist home, or for similar uses.
[Added 6-27-2006 by L.L. No. 2-2006; amended 2-17-2009 by L.L. No. 5-2009]

**DWELLING, MOBILE**
A movable dwelling unit equipped with a chassis designed for occupancy and providing housekeeping facilities, including plumbing, heating, electrical, cooking and refrigeration systems and equipment.
[Amended 6-27-2006 by L.L. No. 2-2006]

**DWELLING, MULTIPLE-FAMILY**
A building or group of buildings, other than a trailer or other temporary structure, occupied exclusively for residential purposes, having dwelling units to accommodate three or more families or functional family units living independently

of each other. This definition shall include apartment houses but shall exclude hotels and rooming houses.
[Amended 6-27-2006 by L.L. No. 2-2006]

### DWELLING, ONE-FAMILY
A building, other than a trailer or other temporary structure, occupied exclusively for residential purposes by an individual or family or a functional family unit.
[Amended 6-27-2006 by L.L. No. 2-2006]

### DWELLING, SECTIONAL
A factory-finished dwelling unit delivered to the owner's lot in halves and capable of complying with all applicable local and state building codes.
[Amended 6-27-2006 by L.L. No. 2-2006]

### DWELLING, TWO-FAMILY
A building, other than a trailer or other temporary structure, occupied exclusively for residential purposes, having dwelling units to accommodate up to two families or functional family units living independently of each other.
[Amended 6-27-2006 by L.L. No. 2-2006]

### DWELLING UNIT
One or more rooms designed or used for living quarters by one household, including provisions for living, cooking, sanitary and sleeping facilities, and having a separate entrance from the outside of the building or through a common hall.
[Amended 6-27-2006 by L.L. No. 2-2006]

### FAMILY
[Amended 6-27-2006 by L.L. No. 2-2006]

(1) A family shall include one or more individuals related by blood, marriage, legal adoption, or guardianship who live together in a single dwelling unit, including domestic help.

(2) A family shall also be composed of one or more individuals living together in a single dwelling unit as a functional family unit, including domestic help. Said individuals shall have a domestic bond and function as a family with respect to those characteristics that are consistent with the purposes of zoning restrictions in residential neighborhoods.

(3) In determining whether individuals are living together as a functional family unit, the following criteria must be present:

(a) The group is one which in theory, size, appearance, structure, and function resembles a family unit.

(b) The occupants must share the entire dwelling unit and live and cook together as a single housekeeping unit. A unit in which the various occupants act as separate roomers shall not be deemed to be occupied by a functional family unit.

(c) The group shares expenses for food, rent, or ownership costs, utilities and other household expenses.

(d)

The group is permanent and stable. Evidence of such permanency and stability may include the following:

[1] The presence of minor dependent children regularly residing in the household and being educated in the community or enrolled in area schools;

[2] Members of the household have the same address for purposes of voter's registration, driver's license, motor vehicle registration and the filing of taxes and with regard to summer or other residences;

[3] Members of the household are employed in the area;

[4] The household has been living together as a unit for a year or more, whether in the current dwelling unit or other dwelling units;

[5] There is common ownership of furniture and appliances among the members of the household; and

[6] The group is not transient or temporary in nature.

(e) Any other factor reasonably related to whether or not the group is a functional family unit.

(4) A group of individuals living together in a single dwelling unit shall be presumed not to be a functional family unit, as defined in this section, if the said dwelling unit is occupied by four or more persons who are not related by blood, marriage, legal adoption, or guardianship.

(5) A group of individuals living together in a single dwelling unit shall be presumed not to be a functional family unit, as defined in this section, if the said dwelling unit contains four or more college students over the age of 16 years. A college student is a person who attends, at least half time, any college, university or other institution authorized to confer degrees by the State of New York.

(6) The presumptions set forth in Subsections **(4)** and **(5)** of this definition may be rebutted by sufficient evidence of the characteristics set forth in Subsection **(3)** of this definition.

**FLOOR AREA RATIO (FAR)**
The quotient of the floor area of a building divided by its net lot area.

**FRATERNITY HOUSE/SORORITY HOUSE**
A building or a portion thereof used and occupied by a cooperating group of college or university students and containing and providing domestic and social facilities and services thereto.
[Added 6-27-2006 by L.L. No. 2-2006]

**FUEL PUMP**
A dispenser used to pump gasoline, diesel, ethanol fuel, biofuels, or other types of fuel into vehicles or appropriate containers.
[Added 1-31-2011 by L.L. No. 4-2011]

**FUEL PUMP ISLAND**

A structure consisting of fuel dispensers, refuse containers, automated payment points, safety bollards, and other related appurtenances.
[Added 1-31-2011 by L.L. No. 4-2011]

**GARAGE, PRIVATE**
A roofed space for the storage of one or more motor vehicles, provided that no business, occupation or service is conducted for profit therein nor space therein for more than one car is leased to a nonresident of the premises.

**GARAGE, PUBLIC**
A building or part thereof operated for gain and used for the storage, hiring, selling, greasing, washing, servicing or repair of motor-driven vehicles.

**GARAGE, STORAGE**
A building or part thereof used only for the storage of vehicles for gain, at which automobile fuels and oils are not sold and motor-driven vehicles are not equipped, repaired, hired or sold.

**GASOLINE STATION**
Any area of land, including structures thereon, that is used or designed to be used for the sale of gasoline or oil or other motor vehicle fuel and which may include facilities for lubricating, washing, cleaning or otherwise servicing motor vehicles, but not including the painting or major repair thereof. The term "gasoline station" shall be deemed to include the terms "filling station" and "service station."

**HOME OCCUPATION**
An occupation, profession or service which is customarily carried on in a dwelling unit or in an existing accessory structure and is carried on by a member or members of the family residing in the dwelling unit, which use is clearly incidental and secondary to the use of the dwelling unit for residential purposes and which use conforms to all of the regulations and conditions listed in this chapter.
[Amended 2-20-1990 by L.L. No. 1-1990]

**HOSPITAL**
A building or structure for the diagnosis and medical or surgical care of human sickness or injuries.

**HOSPITAL, ANIMAL**
A building or structure for the diagnosis and medical or surgical care of sick or injured animals.

**HOTEL OR MOTEL**
A building or group of buildings where transient guests are lodged for hire, but excluding rooming houses.

**JUNKYARD**
A lot, land or structure, or part thereof, used for the collecting, storage and sale of wastepaper, rags, scrap metal or discarded material, or for the collecting, dismantling, storage and salvaging of machinery or vehicles and for the sale of the parts thereof.

**JUNKYARD, AUTOMOBILE**
Any place of storage or deposit, whether in connection with another business or not, where two or more unregistered, old or secondhand motor vehicles, no longer

intended or in condition for legal use on the public highways, are held, whether for the purpose of resale of used parts therefrom, for the purpose of reclaiming for use some or all of the materials therein, whether metal, glass, fabric or otherwise, for the purpose of disposing of the same or for any other purpose. Such term shall include any place of storage or deposit for any such purposes of used parts or waste materials from motor vehicles which, taken together, equal in bulk two or more such vehicles; provided, however, the term "junkyard" shall not be construed to mean an establishment having facilities for processing iron, steel or nonferrous scrap and whose principal produce is scrap iron, steel or nonferrous scrap for sale for remelting purposes.

## LAND USE ACTIVITY

Any construction or other activity which changes the use or appearance of land or a structure or the intensity of use of land or a structure. Land use activity shall explicitly include, but not be limited to, the following: new structures, expansions to existing structures, new uses, changes in or expansion of existing uses, roads, driveways and excavations for the purpose of extracting soil or mineral deposits. [Added 8-21-2000 by L.L. No. 11-2000]

## LAUNDERETTE

A business premises equipped with individual clothes washing or cleaning machines for use by retail customers, exclusive of laundry facilities provided in an apartment, fraternity, sorority, residential hotel or club.

## LOT

A parcel of land considered as a unit, occupied or capable of being occupied by a building or use and accessory buildings or uses, or by a group of buildings united by a common use or interest; and including such open spaces as are required by this chapter, and having its principal frontage on a public street or an officially approved place.

## LOT AREA

The total area included within lot lines. No part of the area within a public right-of-way may be included in the computation of lot area.

## LOT, CORNER

A lot located at the intersection of and fronting on two or more intersecting streets, and having an interior angle at the corner of intersection of less than 135°.

## LOT DEPTH

The mean horizontal distance between the front and rear lot lines, measured in the general direction of the side lot lines.

## LOT, INTERIOR

A lot other than a corner lot.

## LOT LINES

The property lines bounding the lot.

(1) **FRONT LOT LINE**
The lot line separating the lot from the street right-of-way.

(2) **REAR LOT LINE**
The lot line opposite and most distant from the front lot line.

    **(3) SIDE LOT LINE**
        Any lot line other than a front or rear lot line. A side lot line separating a lot from a street is called a "side street lot line."

**LOT, THROUGH**
    A lot having frontage on two approximately parallel or converging streets other than a corner lot.

**LOT WIDTH**
    The distance between side lot lines measured parallel to the front lot line at a distance from the front lot line equal to the front yard specified for the district.

**MANUFACTURED BUILDING**
    Any factory-manufactured dwelling unit or structure, the age, specifications, and requirements of which meet the definition of a "manufactured home" as set forth in the New York State Residential Code.
    [Added 11-16-2009 by L.L. No. 13-2009]

**MOBILE HOME**
    Any factory-manufactured dwelling unit or structure, the age and specifications of which meet the definition of a "mobile home" as set forth in the New York State Residential Code.
    [Added 11-16-2009 by L.L. No. 13-2009]

**MOBILE HOME COURT**
    A parcel of land which has been planned and improved for the placement of two or more mobile homes for nontransient use.

**MODULAR BUILDING**
    Any factory-manufactured dwelling unit or structure, the age, specifications, and requirements of which meet the definition of a "modular home" as set forth in the New York State Residential Code.
    [Added 11-16-2009 by L.L. No. 13-2009]

**NONCONFORMING USE**
    Use of a building or of land that does not comply with the regulations for the district in which it is situated.

**NURSERY SCHOOL**
    Facilities for the daytime care or instruction of two or more children from two to five years inclusive and operated on a regular basis.

**NURSING HOME**
    A proprietary facility, licensed or regulated by the State of New York, for the accommodation of convalescents or other persons who are not acutely ill and not in need of hospital care but who require skilled nursing care and related medical services which are prescribed by or performed under the direction of a person or persons licensed to provide such care or services in accordance with the laws of the State of New York.

**PARKING SPACE**
    An off-street space available for the parking of one motor vehicle and having an area of not less than 180 square feet, exclusive of passageways and driveways thereto.

**PERSON**
> One or more natural persons, corporations, partnerships, associations, and all other entities of any kind, including the agents and employees of same.
> [Added 11-16-2009 by L.L. No. 13-2009]

**PLANNED DEVELOPMENT DISTRICT**
> A structure or group of structures designed to be maintained and operated as a unit in single ownership or control by an individual, partnership, cooperative or corporation and which has certain facilities in common such as yards, open space, recreation areas, garages and parking areas. A planned development district may be residential, commercial, industrial, recreational or a combination of such uses.

**RESIDENTIAL CONDOMINIUM**
> Includes a multi-unit building, buildings, or group of buildings containing two or more units, whether or not attached to each other, in which each individual unit is held in separate private ownership or leasehold for residential use year round by one family only, and in which the structure and the common elements of the property, including all remaining land, floor space, facilities, parking, and storage areas, are used by all unit owners or tenants who have a common interest therein. The term "residential condominium" shall include property and buildings created and administered as a condominium pursuant to the provisions of New York Real Property Law (RPL) Article 9-B, known as the "Condominium Act," and any amendment thereto.
> [Added 5-20-2002 by L.L. No. 3-2002]

**SETBACK**
> The required open space between a building line and/or structure and a front, side, or back lot line. Notwithstanding, a front yard setback shall be measured from the curb or the edge of an improved Village street.
> [Added 1-20-2009 by L.L. No. 1-2009]

**SIGN**
> Any device affixed to or painted or represented directly or indirectly upon a building, structure or land and which directs attention to an object, product, place, activity, person, institution, organization or business, but not including any flag, badge or insignia of any government or government agency, school or religious group or of any civic, charitable, religious, patriotic, fraternal or similar organization, nor any official traffic control device. Each display surface shall be considered to be a sign.

**SIGN, ADVERTISING**
> A sign which directs attention to a business, commodity, service or entertainment sold or offered elsewhere than upon the premises where such sign is located, or to which it is affixed and only incidentally on the premises, if at all.

**SIGN, BUSINESS**
> A sign which directs attention to a business or profession conducted, or a commodity, service or entertainment sold or offered upon the premises where such sign is located or to which it is affixed. A "for sale" or "to let" sign relating to the lot on which it is displayed shall be deemed to be a "business sign."

**SIGN, FLASHING**
> Any illuminated sign on which the artificial light is not maintained stationary or constant in intensity and color when such sign is in use. For the purpose of this chapter, any revolving illuminated sign shall be considered a flashing sign.

**SITE PLAN**

A rendering, drawing or sketch prepared to specifications and containing necessary elements, as set forth in Article XII, which shows the arrangement, layout and design of the proposed use of a single parcel of land as shown on said plan.
[Added 8-21-2000 by L.L. No. 11-2000]

**STORY**

That portion of a building included between the surface of any floor and the surface of the floor next above it, or if there be no floor above it, then the space between any floor and the ceiling next above it.

**STORY, HALF**

That part of a building between a pitched roof and the uppermost full story, and having a floor area at least half as large as the floor below. Space with a clear head room of less than five feet shall not be considered as floor area.

**STREET**

A public or private way which affords the principal means of access to abutting property.

**STRUCTURAL ALTERATION**

Any change in the supporting members of a building such as bearing walls, columns, beams or girders.

**STRUCTURE**

Anything constructed or erected the use of which requires location on the ground or attachment to something having location on the ground.

**TEMPORARY**

Occurring or in place for less than or equal to 90 consecutive days.
[Added 8-21-2000 by L.L. No. 11-2000]

**THEATER, OUTDOOR**

An open lot or part thereof with its appurtenant structures and facilities, devoted primarily to the showing of motion pictures or theatrical productions on a paid-admission basis.

**TOWNHOUSE**

A one-family dwelling in a row of at least three such units in which each unit has its own front and rear access to the outside, no unit is located over another unit, and each unit is separated from any other unit by one or more common fire-resistant walls.
[Added 5-20-2002 by L.L. No. 3-2002]

**TRAILER**

A movable unit equipped with a chassis and wheels, towed or hauled by another vehicle. A travel trailer is a trailer used for vacation or other short-term human occupancy. A recreational trailer is a trailer used for the carrying of materials, goods or objects.
[Added 11-16-2009 by L.L. No. 13-2009]

**YARD, FRONT**

An open space extending across the principal street side of a lot measured between the side yard lines, the depth of which yard shall be the minimum horizontal

distance measured between the curb or the edge of an improved Village street and the main building or any projection thereof other than steps and unenclosed balconies, not extending more than eight feet from the front of the building, except as otherwise provided by this chapter.
[Amended 1-20-2009 by L.L. No. 1-2009]

**YARD, REAR**
An open space extending across the rear of a lot measured between the side lot lines and being the minimum horizontal distance between the rear lot line and the rear of the principal building or any projection thereof other than steps and unenclosed balconies not extending more than eight feet from the rear of the building, except as otherwise provided in this chapter. On both corner and interior lots, the rear yard shall in all cases be at the opposite end of the lot from the front yard.

**YARD, SIDE**
An open space from the front yard to the rear yard between the building and the nearest side lot line unoccupied and unobstructed from the ground upward, except for steps and as otherwise specified in this chapter.

**VARIANCE**
A departure from the terms of this chapter authorized by the Board of Zoning Appeals in accordance with the procedures set forth in this chapter directly relating to a hardship peculiar to an individual lot or situation.

C. If not defined at Subsection **B** of this section or unless otherwise defined by this Code, terms and words used herein shall have the definitions set forth in the New York State Building Code and The Zoning Dictionary (Lehman & Associates).
[Added 6-27-2006 by L.L. No. 2-2006]

# ARTICLE II

# Chapter 325. Zoning

# Article II. Establishment of Districts; Zoning Map; Application

## § 325-4. Districts established.

[Amended 8-3-1987 by L.L. No. 1-1987; 6-27-2006 by L.L. No. 3-2006]
For the purpose of this chapter, the Village of Canton is divided into the following districts:

| | |
|---|---|
| R-1 | Residential District - One-Family |
| R-2 | Residential District - General |
| U-1 | University District |
| B-1 | Business District |
| C-1 | Retail Commercial District |
| C-2 | General Commercial District |
| C-3 | Commercial Park District |
| C-4 | Commercial/Light Industrial District |
| CH | Commercial Historic District |
| M-1 | Manufacturing District |
| O-S | Open Space District |
| P-R | Planned Residence District (planned development district) |
| P-C | Planned Commercial District (planned development district) |
| P-M | Planned Manufacturing District (planned development district) |

## § 325-5. Zoning Map.

The location and boundaries of said districts are hereby established on the Zoning Map of the Village of Canton, dated December 13, 1971, which is attached hereto and is hereby made a part of this chapter. The original map shall be kept in the Village office and updated from time to time.[1]

[1]    *Editor's Note: The Zoning Map and all amendments thereto are on file in the office of the Village Clerk and are available to the public during office hours.*

## § 325-6. Interpretation of district boundaries.

The district boundary lines are intended generally to follow the center lines of streets; the center lines of railroad rights-of-way; existing lot lines; the center lines of rivers, streams and other waterways; and Village boundary lines. Where a district boundary line does not follow such a line, its position shall be shown on the Zoning Map by a specific dimension expressing its distance in feet from a street line or other boundary line as indicated.

A.  Where district boundaries are so indicated that they approximately follow lot lines, such lot lines shall be construed to be said boundary.

B.  Where district boundaries are so indicated that they are approximately parallel to the center of the right-of-way lines of streets or highways, such district boundaries shall be construed to be parallel thereto and at such distance therefrom as indicated on the Zoning Map.

C.  Where a district boundary line divided a lot in single ownership at the time of the passage of this chapter, the regulations for the less restricted portion of such lot shall extend not more than 30 feet into the more restricted portion, provided the lot has frontage on a street in the less restricted district.

D.  In case of uncertainty as to the true location of a district boundary line in a particular instance, the Zoning Officer shall make a determination with respect thereto.

# § 325-7. Application of provisions.

Except as hereinafter otherwise provided:

A.  No building shall be erected and no existing building shall be moved, altered, added to or enlarged, nor shall any land or building be designed, used or intended to be used for any purpose or in any manner other than as specified among the uses hereinafter listed as permitted in the district in which such building or land is located.

B.  No building shall be erected, reconstructed or structurally altered to exceed in height the limit hereinafter designated for the district in which such building is located.

C.  No building shall be erected, no existing buildings shall be altered, enlarged or rebuilt, nor shall any open space surrounding any building be encroached upon or reduced in any manner, except in conformity to the yard, lot area and building location regulations hereinafter designated for the district in which such building or open space is located.

D.  No yard or other open space provided about any building for the purpose of complying with the provisions of this chapter shall be considered as providing a yard or open space for any other building, and no yard or other open space on one lot shall be considered as providing a yard or open space for a building of any other lot.

# ARTICLE III

# Chapter 325. Zoning

# Article III. Use Regulations

## § 325-8. R-1 and R-2 Residential Districts.

[Amended 6-27-1984 by L.L. No. 9-1984; 5-20-2002 by L.L. No. 3-2002; 6-27-2006 by L.L. No. 4-2006]

A. Purpose. The purpose of the residential districts is to:

    (1) Delineate those areas where predominantly residential development has occurred or will be likely to occur;

    (2) Preserve and upgrade the character of residential areas by requiring standards of land use and lot and building bulk and size which accurately reflect existing and potential development;

    (3) Protect the integrity and aesthetic appeal of residential areas by prohibiting the intermixture of residential and incompatible nonresidential uses;

    (4) Protect residential areas, as far as possible, from the consequences of heavy traffic and through traffic;

    (5) Provide for the appropriate location of those educational, religious and similar facilities that may serve the needs of nearby residents;

    (6) Conserve the value of land and buildings and thereby protect and enhance the Village's tax base and revenues.

B. R-1 Residential District - One-Family. In the R-1 Residential District (One-Family), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

    (1) Uses permitted in the R-1 District:

        (a) One-family dwelling.

        (b) Public park or playground.

        (c) Existing farm. (No farm or farm use other than that which presently exists within the zone as of the effective date of this provision shall be permitted within the R-1 District.)

        (d) Accessory building or use.

    (2) Uses permitted in the R-1 District by special exception of the Village Planning Board:

        (a) Accessory apartment, as defined in, and in compliance with, Article II of Chapter **248** of the Municipal Code of the Village of Canton.

        (b) Public, private or parochial school, other than a college or university.

        (c) College or university buildings or grounds, but not to include dormitories, student housing, fraternity houses, sorority houses, theme house, or other group dwelling.

        (d) Church or religious institution.

        (e) Parish house or convent.

        (f) Customary home occupation.

        (g) Uses deemed similar to the uses otherwise permitted in the R-1 District (not to include farm uses, which are permitted only to the extent that they exist in the R-1 District as of the effective date of this provision but which are not otherwise permitted).

C. R-2 Residential District - General. In the R-2 Residential District (General), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

    (1) Uses permitted in the R-2 District:

        (a) Uses permitted within the R-1 Residential District without special exception (but not to include the farm use presently existing in the R-1 District).

        (b) Two-family dwelling.

        (c) Multiple-family dwelling.

        (d) Residential condominium.

        (e) Apartment housing cooperative.

        (f) Townhouse.

        (g) Conversion of existing use as a residential condominium, housing apartment cooperative, or townhouse.

        (h) Accessory building or use.

    (2) Uses permitted in the R-2 District by special exception of the Village Planning Board:

        (a) Accessory apartment, as defined in, and in compliance with, Article II of Chapter **248** of the Municipal Code of the Village of Canton.

        (b) Public, private or parochial school.

    (c)  Church or religious institution.

    (d)  Parish house or convent.

    (e)  Customary home occupation.

    (f)  Nursing home and adult daycare facility.

    (g)  Nursery school and children's day-care center.

    (h)  College or university building or grounds, but not to include dormitories.

    (i)  University or college theme or group house or fraternity or sorority house, but not to include a dormitory.

    (j)  Rooming house or boardinghouse, or other group dwelling, but not to include a dormitory.

    (k)  Uses deemed similar to the uses otherwise permitted in the R-2 District.

# § 325-9. U-1 University District.

A.  Purpose. The purpose of the U-1 University District is to preserve and enhance the character of the college and university campuses by delineating campus areas and related uses and providing for separation of academic, residential, recreational and open space areas and uses from nonrelated areas and uses.

B.  In the U-1 University District no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

  (1)  Uses permitted:

    (a)  One- and two-family dwellings.

    (b)  College or university buildings and uses.

    (c)  Dormitory, fraternity or sorority housing.

    (d)  Faculty or student dwellings.

    (e)  Golf course, field house, stadium or athletic field.

    (f)  University stores or public utilities.

    (g)  College dining facilities.

    (h)  Student activity buildings and areas.

    (i)  University or college farm.

    (j)  Accessory buildings and uses.

# § 325-10. B-1 Business District.

A.  Purpose. The purpose of the B-1 Business District is to delineate an area which is appropriate for public or private offices, churches, institutions and medium-density residential uses by virtue of the relationship to the central business district, major streets, present uses and character of development.

B.  In the B-1 Business District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 6-27-2006 by L.L. No. 5-2006]

(1)  Uses permitted in the B-1 District:

(a)  One- or two-family dwellings.

(b)  Nursing home.

(c)  Municipal or government building.

(d)  Public library or museum.

(e)  Fraternal or social club or lodge.

(f)  Business or professional office or studio (not to include veterinary).

(g)  Charitable or philanthropic institution.

(h)  Funeral home.

(i)  Doctor/medical office.

(j)  Church or religious institution.

(k)  Personal service shop, such as, for example, a beauty shop or barbershop.

(l)  Radio, television, or household appliance service and repair.

(m) Plumbing, heating or cabinet shop.

(n)  Florist shop or greenhouse.

(o)  Antique sales and service.

(p)  Coffee house and related food service.

(q)  Accessory buildings or uses.

(2)  Uses permitted in the B-1 District by special exception of the Village Planning Board:

(a)  Residential condominium, by conversion of an existing structure.

(b)  Fraternity or sorority house.

    (c)  Boardinghouse or rooming house.

    (d)  University or college theme or group house.

    (e)  Other group dwelling.

    (f)  Public or private school.

    (g)  Parish house or convent.

    (h)  Uses deemed similar to the uses otherwise permitted in the B-1 District.

# § 325-11. C-1 Retail Commercial District.

A.  Purpose. The purpose of the C-1 Retail Commercial District is to:

    (1)  Delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole.

    (2)  Encourage new development in the central business district by providing for public and commercial parking areas for businesses and patrons of the district.

B.  In the C-1 Retail Commercial District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 6-27-2006 by L.L. No. 6-2006]

    (1)  Uses permitted in the C-1 District:

        (a)  Financial institutions.

        (b)  Retail store.

        (c)  Personal service shop.

        (d)  Launderette.

        (e)  Restaurant or tavern.

        (f)  Theater.

        (g)  Bowling alley, billiard or pool hall.

        (h)  Hotel or motel.

        (i)  Office equipment or business machine sales and service.

        (j)  Printing shop.

        (k)  Bakery or confectionery.

        (l)  Radio, television or household appliance sales or service.

        (m)  Municipal or governmental building.

     (n)  Museum.

     (o)  Business or professional office or studio.

     (p)  Florist shop.

     (q)  Anitque sales.

     (r)  Fraternal/social clubs/education/charitable or philanthropic.

     (s)  Convenience or grocery store without gas pumps.

     (t)  (Reserved)[2]
       [2]   *Editor's Note: Former Subsection B(1)(t), regarding existing gas stations, was repealed 1-31-2011 by L.L. No. 2-2011.*

     (u)  Existing feed sale and related processing center. (No feed sale or processing center use other than that which presently exists as of the effective date of this provision shall be permitted within the C-1 District.)

     (v)  Apartment units located on the second or higher floors in buildings located within the Canton Historic District.
        [Amended 1-18-2011 by L.L. No. 1-2011]

     (w)  One- and two-family dwellings located outside the Canton Historic District.
        [Amended 1-18-2011 by L.L. No. 1-2011]

  (2)  Uses permitted in the C-1 District by special exception of the Village Planning Board:

     (a)  Group dwelling, not located within the Canton Historic District.
        [Amended 1-18-2011 by L.L. No. 1-2011]

     (b)  Residential condominiums, with such use to be located on the second or higher floors of buildings in the Canton Historic District.
        [Amended 12-30-2008 by L.L. No. 6-2008]

     (c)  Fuel pumps as part of the operation of a convenience or grocery store.
        [Added 1-31-2011 by L.L. No. 2-2011[3]]
       [3]   *Editor's Note: This local law also provided for the redesignation of former Subsection B(2)(c) as B(2)(d).*

     (d)  Uses deemed similar to the uses otherwise permitted in the C-1 District (not to include feed sale and related processing centers, which are permitted only to the extent that they exist in the C-1 District as of the effective date of this provision, but which are not otherwise permitted).
        [Amended 1-31-2011 by L.L. No. 2-2011]

[1]   *Editor's Note: Former § 325-11, B-2 Business/Commercial District, was repealed 6-27-2006 by L.L. No. 5-2006. Local Law No. 6-2006, adopted 6-27-2006, provided for the renumbering of former § 325-12, C-1 Retail Commercial District, as § 325-11; former § 325-13, C-2 General Commercial District, as § 325-12; and former § 325-14, C-3 Commercial Park District, as § 325-13.*

# § 325-12. C-2 General Commercial District.

[Amended 2-19-1991 by L.L No. 2-1991]

A. Purpose. The purpose of the C-2 General Commercial District is to delineate areas appropriate for commercial uses which are oriented either to highway use or intended for service to vehicles, or nonretail commercial uses.

B. In the C-2 General Commercial District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 5-20-2002 by L.L. No. 3-2002; 6-27-2006 by L.L. No. 6-2006]

   (1) Uses permitted in the C-2 District:

      (a) Uses permitted in the C-1 Retail Commercial District without special exception, excluding one- and two-family dwellings.

      (b) Multiple-family dwelling.

      (c) Residential condominium.

      (d) Apartment housing cooperative.

      (e) Townhouse.

      (f) Conversion of existing use to any of the following permitted uses: residential condominium, housing apartment cooperative, or townhouse.

      (g) Automobile, boat, farm implement, mobile home or trailer sale or rental, with indoor services only.

      (h) Motor vehicle and auto-body repair.

      (i) Garage, gas station.

      (j) Retail convenience or grocery store, with or without gas pumps.

      (k) Laundry or dry-cleaning plant.

      (l) Outdoor amusement areas.

      (m) Animal hospital (not to include a kennel).

      (n) Veterinary office or clinic (not to include a kennel).

      (o) Lumber or building supply.

      (p) Wood or metal working, plumbing or electrical sales, service and contracting.

      (q) Radio or television transmitter.

      (r) Feed sale and related processing center.

      (s) Fuel storage and sales.

(t)   Drive-in restaurant.

(u)   Car wash.

(v)   Hospital, medical treatment facility or office.

(w)   Letter press, offset printing shop.

(x)   Light machines and equipment sales and service.

(y)   Cemetery.

(z)   Accessory building uses.

(2)   Uses permitted in the C-2 District by special exception of the Village Planning Board:

(a)   Uses deemed similar to the uses otherwise permitted in the C-2 District.

# § 325-13. C-3 Commercial Park District.

[Added 8-3-1987 by L.L. No. 1-1987; amended 7-21-2003 by L.L. No. 8-2003]

A.   Purpose. The purpose of the C-3 Commercial Park District is to delineate development areas for future growth of services, commerce and light industry in an orderly yet flexible manner to meet the needs of private developers.

B.   In the C-3 Commercial Park District, no buildings or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 5-20-2002 by L.L. No. 3-2002; 6-27-2006 by L.L. No. 6-2006]

(1)   Uses permitted in the C-3 District:

(a)   Financial institution.

(b)   Retail convenience or grocery store, with or without gas pumps.

(c)   Restaurant.

(d)   Theater.

(e)   Hotel or motel.

(f)   Municipal or government building.

(g)   Museum.

(h)   Gas station.

(i)   Hospital or treatment center.

(j)   Medical facilities, including doctor's office.

(k)   Warehouse, storage or truck terminal.

      (l)  Professional building.

      (m)  Development or research center.

      (n)  Lumber or building supply.

      (o)  Customary accessory building uses.

(2)  Uses permitted in the C-3 District by special exception of the Village Planning Board:

      (a)  Radio/TV transmission facility.

      (b)  Wireless communications antenna facility, including minor antenna facility and major antenna facility.

      (c)  Adult use businesses.

      (d)  Public utility or use.

      (e)  Uses deemed similar to the uses otherwise permitted in the C-3 District.

# § 325-14. C-4 Commercial/Light Industrial District.

[Added 6-27-2006 by L.L. No. 6-2006]

A.  Purpose. The purpose of the C-4 Commercial/Light Industrial District is to provide areas for development and growth of light industry, along with providing an area for corrections and related facilities.

B.  In the C-4 Commercial/Light Industrial District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

(1)  Uses permitted in the C-4 District:

      (a)  Correction facility.

      (b)  Warehouse, storage or truck terminal.

      (c)  Light industrial uses that are contained within a building.

(2)  Uses permitted in the C-4 District by special exception of the Village Planning Board:

      (a)  Radio/TV transmission facility.

      (b)  Wireless communications antenna facility, including minor antenna facility and major antenna facility.

      (c)  Uses permitted within the M-1 Manufacturing District, including the sale within the C-4 District of items produced, manufactured, assembled, processed or treated in connection with such uses.
        [Amended 9-21-2015 by L.L. No. 1-2015]

   (d)  Public utility or use.

   (e)  Uses deemed similar to the uses otherwise permitted in the C-4 District.

# § 325-15. M-1 Manufacturing District.

A.  Purpose. The purpose of the M-1 Manufacturing District is to:

   (1)  Delineate those areas best suited for industrial development because of location, topography, existing facilities and relation to other land uses.

   (2)  Preserve the integrity of the manufacturing areas by excluding uses which are incompatible with industry.

B.  In the M-1 Manufacturing District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

   (1)  Uses permitted in the M-1 District:

      (a)  Development or research center.

      (b)  Manufacture, assembly, processing or treatment of the following:

         [1]  Textiles, leather or plastics.

         [2]  Candy.

         [3]  Food products.

         [4]  Electrical, precision, surgical, dental or musical instruments.

         [5]  Toys or novelties.

         [6]  Paper, plastic, metal, stone or wood products from previously prepared materials.

         [7]  Concrete products or monuments.

      (c)  Machine shop.

      (d)  Welding or metal craft shop.

      (e)  Customary accessory building or use.

   (2)  Uses permitted in the M-1 District by special exception of the Village Planning Board:

      (a)  Ready-mix concrete plant.

      (b)  Uses deemed similar to the uses otherwise permitted in the M-1 District.

# § 325-16. O-S Open Space District.

A. Purpose. The purpose of the O-S Open Space District is to:

   (1) Delineate those areas where substantial development of the land in the form of buildings or structures is prohibited due to:

      (a) Special or unusual conditions of topography, drainage, floodplain or other natural conditions whereby the hazard of damages to buildings and possible loss of life may occur due to natural causes.

      (b) The lack of proper community facilities or improvements result in the land not being ready for development.

   (2) Preserve significant natural and scenic areas.

B. In the O-S Open Space District no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

   (1) Uses permitted:

      (a) Public park or playground.

      (b) Marina, beach, golf course or athletic field.

      (c) Utility or municipal building.
      [Amended 8-17-1988 by LL No. 4-1988]

      (d) Educational or institutional grounds without principal structures.

      (e) Accessory uses.

# § 325-17. P-R Planned Residence, P-C Planned Commercial and P-M Planned Manufacturing Districts (planned development districts).

A. Purposes. The purposes of the planned development districts are to:

   (1) Provide for new residential, commercial or manufacturing districts in which economies of scale or creative architectural or planning concepts may be utilized by the developer without departing from the spirit and intent of this chapter.

   (2) Ensure that the regulations of this section are so interpreted and applied that the benefits of this chapter to the residents or occupants of the planned development district or the residents or occupants of adjacent properties will be protected.

B. Planned development districts and building projects within a planned development district may be established in accordance with the procedure specified below.

   (1) Application for designation of a planned development district by amendment of the Village Zoning Map shall be made to the Board of Trustees. The Board of Trustees shall refer the application to the Planning Board within 10 days after receipt of the application. The applicant shall furnish basic data pertaining to the boundaries of the proposed planned district, existing zoning, topography, drainage and soil

conditions, and such preliminary plans as may be required for an understanding of the proposed development, with the petitions for the desired zoning change.

(2) Application for construction of a building within an established planned district shall be made to the Board of Trustees. The Board of Trustees shall refer the application to the Planning Board within 10 days after receipt of the application. The applicant shall furnish necessary data regarding topography, building types and layout, setbacks, off-street parking and loading, ingress and egress, signs, existing and proposed amenities such as screening, planting and ornamental features, and such other preliminary data and plans as may be required for an understanding of the proposed development.

C. The use, area and height limitations and access, parking and loading regulations for planned development districts shall be as follows and as shown on the Schedule of Use, Area and Height Regulations,[1] in § 325-41 regarding off-street parking, and elsewhere in this chapter.

(1) Uses permitted in P-R-Planned Residence Districts:

(a) One-family dwellings.

(b) Townhouses.

(c) Two-family dwellings or apartments.

(d) Park, playground or golf course.

(e) Residential condominiums.
[Added 5-20-2002 by L.L. No. 3-2002]

(f) Apartment housing cooperatives.
[Added 5-20-2002 by L.L. No. 3-2002]

(g) Conversion of existing uses to any of the following permitted uses: residential condominiums, housing apartment cooperatives, or townhouses.
[Added 5-20-2002 by L.L. No. 3-2002]

(h) Accessory building uses.
[Added 5-20-2002 by L.L. No. 3-2002]

(2) Uses permitted in P-C-Planned Commercial Districts:

(a) Retail stores or shopping center.

(b) Business or professional offices.

(c) Bank or other monetary institution.

(d) Data processing center.

(e) Motel or restaurant.

(f) Personal service shops, such as barber- or beauty shop or laundromat.

(g) Bowling alleys.

      (h)  Office equipment or business machine sales and service.

      (i)  Printing plant.

      (j)  Automobile, boat, farm implement, mobile home or trailer sales, rental or service.

      (k)  Laundry or dry-cleaning plant.

      (l)  Customary accessory uses.

(3)  Used permitted in P-M-Planned Manufacturing Districts:

      (a)  Planned Commercial District uses.

      (b)  Development or research center.

      (c)  Concrete products or monuments.

      (d)  Light manufacturing.

      (e)  Warehouse.

[1]   *Editor's Note: The Schedule of Use, Area and Height Regulations is included at the end of this chapter.*

D.  Within the planned districts, the following regulations shall apply:

(1)  Area.

      (a)  A Planned Residence District shall have a minimum area of three acres and shall have a street frontage of at least 300 feet.

      (b)  A Planned Commercial District shall have a minimum area of 10 acres and shall have a street frontage of at least 500 feet.

      (c)  A Planned Manufacturing District shall have a minimum area of 25 acres and shall have a street frontage of at least 500 feet.

      (d)  A Planned Residence, Commercial or Manufacturing District within a built-up area of the Village, however, shall have a minimum area of two acres and shall have a street frontage of at least 200 feet.

      (e)  The calculation of area for a planned district shall not include easements, existing parks, existing streets or otherwise dedicated land; water areas in excess of 5% of the minimum gross acreage; lands designated on the Official Map for public purposes; or land not suitable for development by reason of topography, drainage or adverse subsoil conditions.

(2)  Yard dimensions.

      (a)  Exterior yards at planned district boundaries shall be a minimum of 50 feet.

      (b)  Interior yards between buildings shall be a minimum of twice the building height for commercial or industrial uses.

(3) Building height. The height of buildings shall be limited to 40 feet for commercial or industrial uses.

(4) Ingress and egress. Locations for ingress and egress shall be approved by the Planning Board, and in the case of Planned Commercial or Industrial Districts, shall be so arranged as not to connect with local residential streets.

(5) Off-street parking.

    (a) Off-street parking in a Planned Residence District shall conform with requirements of § 325-41.

    (b) Off-street parking in a Planned Commercial District shall be provided at a minimum ratio of 2 1/2 square feet of parking for each square foot of gross leasable area. Parking in any front yard in a Planned Commercial District shall be separated from the street or highway right-of-way by a lawn or planting area 20 feet or more wide. Parking or loading in any Planned Commercial District shall be adequately screened from any adjacent residence district.

    (c) Off-street parking or loading in a Planned Manufacturing District shall conform with requirements of § 325-41 and shall be confined to the side or rear yard; and shall be adequately screened from any adjacent residence district.

(6) Off-street loading. Off-street loading facilities shall be provided for each commercial or manufacturing establishment and shall be so arranged as not to interfere with pedestrian or motor traffic on the public highway, or any adjacent residential area.

E. Application for planned development.

(1) The Planning Board shall review any planned development district application and may require such changes in the preliminary plans as are found to be necessary to meet the requirements of this chapter, to protect the established or permitted uses in the vicinity and to promote the orderly growth and sound development of the community. In reaching its decision on the proposed development and changes, if any, in the preliminary plans, the Planning Board shall determine, among other things, the following:

    (a) The existing character of the neighborhood.

    (b) The location of principal and accessory buildings on the site in relation to one another and to other structures and uses in the vicinity.

    (c) The pedestrian circulation and open space in relation to structures.

    (d) The traffic circulation features within the site, and the amount, location, and access to automobile parking areas and loading areas.

    (e) The height and bulk of buildings.

    (f) The proposed location, type and size of display signs, driveways and landscape features.

    (g) The safeguards provided to minimize possible detrimental effects of the proposed use on adjacent properties and the neighborhood in general.

(h)  Storm drainage and sanitary waste disposal in and adjacent to the area.

(2)  The Planning Board shall approve, approve with modifications or disapprove the application and shall report its findings to the Board of Trustees within 45 days following the date of referral to the Planning Board by the Board of Trustees. Planning Board approval of the preliminary plans shall not constitute nor imply a permit for or approval of construction plans.

(3)  In the event the Planning Board disapproves a building project within a planned development district, or approves the project with modifications which the applicant is unwilling to make, an affirmative vote of not less than 3/4 of the members of the Board of Trustees shall be required.

(4)  The Board of Trustees shall hold a public hearing on any proposal to create a planned development district, with public notice, as in the case of any amendment to this chapter. The Board of Trustees may amend the Zoning Chapter or Map to establish and define the type and boundaries of the planned district, after a public hearing.

(5)  A building project within a planned district shall conform substantially with the preliminary plans approved by the Planning Board. A building permit may be issued by the direction of the Board of Trustees only after construction plans and specifications have been filed and approved.

(6)  If construction work on the proposed building project is not begun within time limits specified by the building permit, or if such work is not completed within the period of time specified by such permit, approval of the project application shall become null and void and all rights therein shall cease, unless the Board of Trustees for good cause authorizes an extension.

(7)  All conditions imposed by the Board of Trustees, including those the performance of which are conditions precedent to the issuance of any permit necessary for the development of any part of the entire site, shall run with the land and shall not lapse or be waived as a result of any subsequent change in the tenancy or ownership of any or all of said area. Such conditions shall be stated in any certificate of occupancy issued for any use or structure in such development.

# ARTICLE VI

*Village of Canton, NY*
*Monday, February 18, 2019*

# Chapter 325. Zoning

# Article VI. Nonconforming Uses and Structures

## § 325-45. Continuation of existing uses.

The lawful use of any land or building existing at the time of the adoption of this chapter may be continued, although such use does not conform with the provisions of this chapter. Any such building may be reconstructed or structurally altered and the nonconforming use therein changed, subject to the following regulations.

## § 325-46. Additions and enlargements.

A nonconforming building or use shall not be added to or enlarged unless such nonconforming building or use is made to conform to the regulations of the district in which it is located.

## § 325-47. Alterations to nonconforming buildings.

A building nonconforming as to use may not be reconstructed or structurally altered during its life to an extent exceeding in aggregate cost of 50% of the fair value of the building unless the use of such building is changed to a conforming use.

## § 325-48. Changes in classification.

A nonconforming use may be changed to another nonconforming use of the same or higher classification according to the provisions of this chapter, and when so changed such use shall not thereafter be changed to a nonconforming use of a lower classification.

## § 325-49. Discontinuance.

Whenever a nonconforming use has been discontinued for a period of one year, any future use shall be in conformity to the provisions of this chapter. A reasonable interim, however, between tenants or occupants shall not be construed to mean discontinuance.

## § 325-50. Restoration.

A building nonconforming as to use which has been damaged by fire or other causes to the extent of not more than 50% of its fair value may be restored, reconstructed or used as before, provided that the bulk, height and area requirements shall not exceed that which existed before said damage. Said restoration must be completed within two years of such occurrence or the use of the building or land as a legal nonconforming use thereafter shall be terminated.

## § 325-51. Removal.

If any building in which any nonconforming use is conducted is hereafter removed, the subsequent use of the land on which such building was located and the subsequent use of any building erected thereon shall conform with the regulations of the district.

## § 325-52. Validity of permit where construction has commenced.

Any building for which a permit has been lawfully granted, and on which the construction has been started and diligently prosecuted before the effective date of this chapter may be completed.

# ARTICLE VII

Village of Canton, NY
Monday, February 18, 2019

# Chapter 325. Zoning

# Article VII. Administration and Enforcement

## § 325-53. Enforcement by Code Enforcement Officer.

This chapter shall be enforced by a person hereinafter called the "Code Enforcement Officer," who shall be designated by the Village Board of Trustees, and who shall in no case grant any permit for any building or use on premises where the proposed erection, alteration, relocation or use thereof would be in violation of any provision of this chapter. The Code Enforcement Officer shall make such inspections of buildings or premises as are necessary to carry out his duties. No permit nor certificate of occupancy required hereunder shall be issued by the Code Enforcement Officer except in compliance with the provisions of this chapter or as directed by the Board of Appeals under the provisions of Article VIII.

## § 325-54. Zoning permit.

A. No building shall hereafter be erected, relocated or altered as to outside dimensions or so as to permit a change in its use and no excavation for any building shall be begun unless and until a permit therefor has been issued by the Code Enforcement Officer, or by the Board of Appeals wherever it is provided in this chapter that the approval of the Board of Appeals is required. The fee for any such permit shall be as determined by the Board of Trustees from time to time.

B. No such permit shall be issued until there has been filed with the Code Enforcement Officer a sketch or plot plan showing the actual dimensions and angles of the lot to be built upon, the exact size and location on the lot of the building or accessory buildings to be erected, relocated or altered and such other information as may be necessary to determine and provide for the enforcement of this chapter. Each application shall state the purpose for which the structure or land is to be used and a general description of the type of construction.

C. The Code Enforcement Officer shall issue or refuse to issue such permits all within a reasonable time. Notice of refusal to issue any permit shall be given to the owner or to his authorized representative in writing and shall state the reasons for said refusal.

## § 325-55. Certificate of occupancy.

A. No land shall be used or occupied, and no building hereafter erected, altered or extended shall be used or changed in use, until a certificate of occupancy shall have been issued by the Code Enforcement Officer. Under such rules as may be established

by the Board of Appeals, a temporary certificate of occupancy for not more than 30 days for a part of a building may be issued by the Code Enforcement Officer. For previously existing construction, the Code Enforcement Officer may, on request, issue such a certificate if he determines that the use of the building in question meets the requirements of this chapter.

B. A certificate of occupancy shall be issued only if the proposed use of the building or land conforms to the provisions of this chapter and to the plot plan, purpose and description for which the permit was issued. The Code Enforcement Officer shall make or cause to have made an inspection of each building or lot for which a certificate of occupancy has been applied before issuing such certificate. Such inspection shall be made within 10 days from the date of application, Saturdays, Sundays and legal holidays excepted.

## § 325-56. Completion of buildings under construction.

Nothing herein contained shall require any change in the plans, construction or designated use of a building actually under construction legally at the time of the passage of this chapter and which entire building shall be completed within one year from the date of the passage of this chapter.

## § 325-57. Violations.

[Amended 11-16-2009 by L.L. No. 11-2009]

A. The Code Enforcement Officer is authorized to order in writing the remedying of any condition or activity found to exist in, on or about any building, structure, or premises in violation of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter.

B. Upon finding that any such condition or activity exists, the Code Enforcement Officer shall issue a compliance order.

(1) The compliance order:

(a) Shall be in writing;

(b) Shall be dated and signed by the Code Enforcement Officer;

(c) Shall specify the condition or activity that violates this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter;

(d) Shall identify the provision or provisions of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter, which is/are violated by the specified condition or activity;

(e) Shall specify the period of time which the Code Enforcement Officer deems to be reasonably necessary for achieving compliance, and shall direct that compliance be achieved within the specified period of time; and

    (f)   Shall state that an action or proceeding to compel compliance may be instituted if compliance is not achieved within the specified period of time.

  (2)  The Code Enforcement Officer shall cause the compliance order, or a copy thereof to be served on the owner of the affected property personally or by registered mail or certified mail.

  (3)  The Code Enforcement Officer shall be permitted, but not required, to cause the compliance order, or a copy thereof to be served on any occupant of the affected property personally or by registered mail or certified mail; provided, however, that failure to serve any occupant shall not affect the efficacy of the compliance order.

C.  The Code Enforcement Officer is authorized to issue appearance tickets for any violation of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter.

D.  Upon authorization by the Village of Canton Board of Trustees, an action or proceeding may be instituted in the name of this Village in a court of competent jurisdiction, to prevent, restrain, enjoin, correct, or abate any violation of or to enforce, any provision of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter.

E.  All costs and expenses incurred by the Village of Canton to prevent, restrain, enjoin, correct, or abate any violation of, or to enforce, any provision of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter, to include, without limitation, the costs and expenses of any court action or proceeding undertaken in connection therewith, plus accrued interest at the rate of 9% per annum, shall be charged to the owner(s) of said premises, who shall be jointly and severally personally responsible for the payment of said costs, expenses, and accrued interest. The Code Enforcement Officer shall file a sworn statement with the Village Clerk identifyng the location of the property upon which the violation occurred, and showing the costs and expenses incurred by the Village. The filing of said sworn statement shall constitute a lien on the property, which shall remain in full force for the amount due for collection until full payment or satisfaction has been made. Said costs and expenses and accrued interest shall be assessed against the property and levied as part of the next Village tax bill for the property and collected in the manner fixed by law for the collection of taxes.

F.  In addition to any other penalties prescribed by law, any person who violates any provision of this chapter or any other applicable local law, ordinance, or regulation adopted by the Village Board of Trustees for administration and enforcement of this chapter, shall be liable to a civil penalty of not less than $50 and not more than $200 for each day or part thereof during which such violation continues. The civil penalties provided by this section shall be recoverable in an action instituted in the name of this Village.

G.  No remedy or penalty specified in this section shall be the exclusive remedy or penalty available to address any violation described in this section, and each remedy or penalty specified in this section shall be in addition to, and not in substitution for or limitation of the other remedies or penalties specified in this section or in any other section of this chapter, or in any other applicable law. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty.

# ARTICLE VIII

# Chapter 325. Zoning

# Article VIII. Board of Appeals

## § 325-58. Establishment; membership; rules and regulations.

[Amended 7-17-2000 by L.L. No. 3-2000]

A.  There is hereby established a Board of Appeals which shall function in the manner prescribed by law. The members of the Board of Appeals shall be residents of the Village of Canton and shall be appointed by the Village Board of Trustees to serve for terms as prescribed by law. The Mayor shall annually appoint one of the members of the Board of Appeals to serve as Chairperson, and such appointment shall be subject to the approval of the Village Board of Trustees. Vacancies occurring in the Board of Appeals by expiration of term or otherwise shall be filled in the same manner. The Board of Appeals shall adopt from time to time such rules and regulations as it may deem necessary to carry into effect the provisions of this chapter, and all its resolutions and orders shall be in accordance therewith.
[Amended 1-16-2007 by L.L. No. 2-2007]

B.  There shall hereby be established alternate Zoning Board of Appeals member positions equal in number to the number of regular members appointed to the Zoning Board of Appeals. Alternate members of the Zoning Board of Appeals shall be appointed by the Mayor, subject to the approval of the Village Board of Trustees, for terms that shall expire at the end of each official year.

C.  An alternate member of the Zoning Board of Appeals shall substitute for a regular member of the Zoning Board of Appeals in the event such regular member is unable to participate because of a conflict of interest on an application or matter before the Zoning Board of Appeals. It shall be the responsibility of the Chairperson of the Zoning Board of Appeals to designate an alternate member to substitute for a regular member of the Zoning Board of Appeals in the event such regular member is unable to participate because of a conflict of interest on an application or matter before the Zoning Board of Appeals. When so designated, the alternate member shall possess all the powers and responsibilities of such regular member of the Zoning Board of Appeals. Such designation shall be entered into the minutes of the initial Zoning Board of Appeals meeting at which the substitution is made.

## § 325-59. Meetings.

All meetings of the Board of Appeals shall be held at the call of the Chairman and at such other times as such Board may determine. The Chairman, or in his absence the Acting Chairman, may administer oaths and compel the attendance of witnesses. Meetings of the Board shall be open to the public. Such Board shall keep minutes of its proceedings showing the vote of each member upon every question, or if absent or failing to vote indicating such fact, and shall also keep records of its examinations and other official actions.

# § 325-60. Records.

All decisions of the Board shall be in writing and a copy of each decision shall be sent to the applicant, to the Village Clerk and to the Zoning Officer. Every rule, regulation, amendment or repeal thereof and every order, requirement, decision or determination of the Board shall immediately be filed in the office of the Board and shall be a public record. Each decision shall set forth fully the reasons for the decision of the Board and the findings of fact on which the decision was based. Such findings and reasons shall include references to the standards pertaining thereto where the appeal is for a variance or a special exception.

# § 325-61. Appeals.

A. The Board of Appeals shall hear and decide all matters referred to it upon which it is required to pass under this chapter. The concurring vote of a majority of the Board of Appeals shall be necessary to reverse any order, requirement, decision or determination of the Zoning Officer, or to decide in favor of the applicant on any matter upon which it is required to pass under this chapter or to effect any variation in this chapter. Such appeal may be taken by any persons aggrieved, or by an officer, department, board or bureau of the Village.
[Amended 1-16-2007 by L.L. No. 2-2007]

B. Such appeal shall be taken within 30 days or such additional time as shall be prescribed by the Board of Appeals by general rule, by filing with the Zoning Officer and with the Board of Appeals a notice of appeal specifying the grounds thereof. The Zoning Officer shall forthwith transmit to the Board all of the papers constituting the record upon which the action appealed from was taken.

C. Stay. An appeal stays all proceedings in furtherance of the action appealed from unless the Zoning Officer from whom the appeal is taken certifies to the Board of Appeals after the notice of appeal shall have been filed with him that by reason of acts stated in the certificate, a stay would in his opinion cause imminent peril to life or property, in which case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the Board of Appeals or by a court of record upon application, upon notice to the officer from whom the appeal is taken and upon due cause shown.

# § 325-62. Powers and duties.

The Board of Appeals shall have the following powers and duties prescribed by statute and by this chapter:

A. Interpretation. Upon appeal from a determination of the Zoning Officer to hear and decide on questions where it is alleged there is an error in any order, requirement,

decision or determination made by the Zoning Officer involving the interpretation of any provision of this chapter upon which the Board of Appeals has authority to act.
[Amended 1-16-2007 by L.L. No. 2-2007]

B.  Variance. Upon appeal from a determination of the Zoning Officer and in conformity with law, to vary the requirements as they apply to a particular lot where the property owner can show that his property was acquired in good faith and where the strict application of this chapter would result in practical difficulty or unnecessary hardship. No application for a variance shall be acted on until the required public hearing has been held. The Board of Appeals shall prescribe appropriate conditions and safeguards to carry out the requirements of this subsection and shall not grant any variance unless it shall make a finding of fact based upon the evidence as presented to it in each specific case that:

(1)  Because of exceptional narrowness, shallowness, shape or area of the specific parcel, or because of extraordinary topographic conditions or other physical condition or location of the specific parcel, the strict application of the provisions of this chapter actually prohibit or unreasonably restrict the use of the land or building for which such variance is sought, that the granting of the variance is necessary for the reasonable use of such property, and that the variance granted by the Board is the minimum variance that will provide for the reasonable use of the property; or

(2)  The granting of the variance will alleviate a clearly demonstrable hardship as distinguished from a special privilege or convenience sought by the owner, which conditions are peculiar to such land or building and do not apply generally to land or buildings in the vicinity or neighborhood and have not resulted from any act of the applicant subsequent to the adoption of this chapter; and

(3)  In any case, the granting of the variance will be in harmony with the intent and purpose of this chapter, will not constitute, in effect, an amendment of any district regulations, boundaries or uses and will not be injurious to the neighborhood.

C.  [1]Hearing and determination. The Board of Appeals shall fix a reasonable time for the hearing of the appeal and shall give due notice thereof to the parties, and by publication at least once in the official newspaper seven days before the date of the hearing; and said Board shall decide the same within a reasonable time. Upon the hearing, any party may appear in person or by agent or attorney. The applicant shall bear the cost of advertising as required in connection with hearings.

[1]    Editor's Note: Former Subsection C, which authorized the Board of Appeals to grant special exceptions, was repealed 1-16-2007 by L.L. No. 2-2007. This local law also provided for the redesignation of former Subsection D as Subsection C.

# REFERENCE

## *Canton Village Code*

A. *Pre-2006*

1.  Originally, zoning was cumulative: pyramid zone (Higher uses [*residential*] permitted in lower use zones [*i.e., commercial*], but not the other way around.

| District | Allowed Uses |
|---|---|
| R-1<br>Residential –<br>One Family | *The purpose of the residential districts is to:*<br><br>*(1)    Delineate those areas where predominately residential development has occurred or will be likely to occur in accordance with the Canton Village Plan.*<br><br>*(2)    Upgrade the character of residential areas by requiring standards of land use and lot and building bulk and size which accurately reflect the existing and potential development.*<br><br>*(3)    Protect the integrity of residential areas by prohibiting the intermixture of residential and incompatible non-residential, recreational and open space areas.*<br><br>*(4)    Enhance the character of the college and university campuses by preserving the character of academic, residential, recreational and open space areas.*<br><br>*Uses permitted*:<br><br>(a)    One-family dwelling.<br>(b)    Public or parochial school.<br>(c)    College or university buildings or grounds.<br>(d)    Church, parish house or convent.<br>(e)    Public park and playground.<br>(f)    Existing farm.<br>(g)    Customary home occupation.<br>(h)    Accessory building or use.<br><br>*Uses permitted as a special exception by the Board of Appeals*:<br><br>(a)    Public utility station or structure.<br>(b)    Nursing home.<br>(c)    Accessory apartment |

| | |
|---|---|
| R-2 Residential – General | *Uses permitted*:<br><br>(a) **R-1 residential uses.**<br>(b) Two-family dwelling.<br>(c) 3 or 4 family dwelling, by conversion of dwellings existing in 1968.<br>(d) Multiple-family dwelling.<br>(e) Rooming or boarding house.<br>(f) Fraternity or sorority house, college dormitory.<br>(g) Customary home occupation.<br>(h) Accessory building or use.<br><br>*Uses permitted as a special exception by the Board of Appeals*:<br><br>(a) Public utility station or structure.<br>(b) Nursing home.<br>(c) Nursery school or day care center. |
| B-1 Business | *The purposes of the B-1 Business District is to delineate an area which is appropriate for public or private offices, churches, institutions and medium-density residential uses by virtue of the relationship to the central business district, major streets, present uses and character of development.*<br><br>*Uses permitted*:<br><br>(a) **R-2 uses.**<br>(b) Nursing home.<br>(c) Municipal or government building.<br>(d) Public library or museum.<br>(e) Fraternal or social club or lodge.<br>(f) Business or professional office or studio.<br>(g) Educational, eleemosynary, religious or philanthropic institution.<br>(h) Funeral home.<br>(i) Customary accessory use. |

| | |
|---|---|
| B-2<br>Business /<br>Commercial | *The purpose of the B-2 Business/Commercial District is to delineate an area which is appropriate for public or private offices, churches, institutions and medium-density residential uses, and in addition, certain personal services and trades by virtue of the relationship to the central business district, major streets, present uses and character development, and wherein all service and storage are conducted indoors.*<br><br>*Uses permitted*:<br><br>(a)  **B-1 uses.**<br>(b)  Personal service shop such as beauty or barber shop.<br>(c)  Letter press, offset printing shop.<br>(d)  Radio, television or household appliance service and repair.<br>(e)  Light machines and equipment sales and service.<br>(f)  Plumbing, heating or cabinet shop.<br>(g)  Florist shop or greenhouse.<br>(h)  Antique sales and service.<br>(i)  Customary accessory use. |
| C-1<br>Retail<br>Commercial | *The purpose of the C-1 Retail Commercial District is to: (1)Delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole; and (2) Encourage new development in the central business district by providing for public and commercial parking areas for businesses and patrons of the district.*<br><br>*Uses permitted*:<br><br>(a)  **B-2 uses,** except one and two family dwellings.<br>(b)  Retail store.<br>(c)  Personal service shop.<br>(d)  Launderette.<br>(e)  Restaurant or tavern.<br>(f)  Theater.<br>(g)  Bowling alley, billiard or pool hall.<br>(h)  Hotel or motel.<br>(i)  Office equipment or business machine sales and service.<br>(j)  Letter press shop or printing plant.<br>(k)  Public utility station or structure.<br>(l)  Bakery or confectionary.<br>(m)  Radio, television or household appliance sales or service.<br>(n)  Customary accessory uses. |

| | |
|---|---|
| C-1<br>Retail<br>Commercial | *Uses permitted as a special exception by the Board of Appeals:*<br><br>(a)    Filling station.<br>(b)    Research center, laboratory. |

B.    *2006 and After*:

1.    Cumulative zoning gave way to noncumulative (*or exclusive*) zoning, in which specified land uses were confined to specified districts and thus could be separated.

C.    *Current Code Provisions (relevant to issue at hand):*

1.    § 325-8    *R-1 and R-2 Residential Districts*
    *[Amended 6-27-1984 by L.L. No. 9-1984; 5-20-2002 by L.L. No. 3-2002; 6-27-2006 by L.L. No. 4-2006]*

    A.    *Purpose*
    The purpose of the residential districts is to:

        (1)    Delineate those areas where predominantly residential development has occurred or will be likely to occur;

        (2)    Preserve and upgrade the character of residential areas by requiring standards of land use and lot and building bulk and size which accurately reflect existing and potential development;

        (3)    Protect the integrity and aesthetic appeal of residential areas by prohibiting the intermixture of residential and incompatible nonresidential uses;

        (4)    Protect residential areas, as far as possible, from the consequences of heavy traffic and through traffic;

        (5)    Provide for the appropriate location of those educational, religious and similar facilities that may serve the needs of nearby residents;

        (6)    Conserve the value of land and buildings and thereby protect and enhance the Village's tax base and revenues.

    B.    *R-1 Residential District - One-Family*
    In the R-1 Residential District (One-Family), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

(1)     Uses permitted in the R-1 District:

    (a)     One-family dwelling.

    (b)     Public park or playground.

    (c)     Existing farm. (*No farm or farm use other than that which presently exists within the zone as of the effective date of this provision shall be permitted within the R-1 District.*)

    (d)     Accessory building or use.

(2)     Uses permitted in the R-1 District by special exception of the Village Planning Board:

    (a)     Accessory apartment, as defined in, and in compliance with, Article II of Chapter 248 of the Municipal Code of the Village of Canton.

    (b)     Public, private or parochial school, other than a college or university.

    (c)     College or university buildings or grounds, but not to include dormitories, student housing, fraternity houses, sorority houses, theme house, or other group dwelling.

    (d)     Church or religious institution.

    (e)     Parish house or convent.

    (f)     Customary home occupation.

    (g)     Uses deemed similar to the uses otherwise permitted in the R-1 District (*not to include farm uses, which are permitted only to the extent that they exist in the R-1 District as of the effective date of this provision but which are not otherwise permitted*).

C.     *R-2 Residential District - General.*
In the R-2 Residential District (General), no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

(1)     Uses permitted in the R-2 District:

(a)    Uses permitted within the R-1 Residential District without special exception (but not to include the farm use presently existing in the R-1 District).

(b)    Two-family dwelling.

(c)    Multiple-family dwelling.

(d)    Residential condominium.

(e)    Apartment housing cooperative.

(f)    Townhouse.

(g)    Conversion of existing use as a residential condominium, housing apartment cooperative, or townhouse.

(h)    Accessory building or use.

(2)    Uses permitted in the R-2 District by special exception of the Village Planning Board:

(a)    Accessory apartment, as defined in, and in compliance with, Article II of Chapter 248 of the Municipal Code of the Village of Canton.

(b)    Public, private or parochial school.

(c)    Church or religious institution.

(d)    Parish house or convent.

(e)    Customary home occupation.

(f)    Nursing home and adult daycare facility.

(g)    Nursery school and children's day-care center.

(h)    College or university building or grounds, but not to include dormitories.

(i)    University or college theme or group house or fraternity or sorority house, but not to include a dormitory.

(j)    Rooming house or boardinghouse, or other group dwelling, but not to include a dormitory.

(k)    Uses deemed similar to the uses otherwise permitted in the R-2 District.

2.    **§ 325-10    _B-1 Business District_**

A.    _Purpose_
The purpose of the B-1 Business District is to delineate an area which is appropriate for public or private offices, churches, institutions and medium-density residential uses by virtue of the relationship to the central business district, major streets, present uses and character of development.

B.    _Permitted Uses_
In the B-1 Business District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 6-27-2006 by L.L. No. 5-2006]

(1)    Uses permitted in the B-1 District:

(a)    One- or two-family dwellings.

(b)    Nursing home.

(c)    Municipal or government building.

(d)    Public library or museum.

(e)    Fraternal or social club or lodge.

(f)    Business or professional office or studio (_not to include veterinary_).

(g)    Charitable or philanthropic institution.

(h)    Funeral home.

(i)    Doctor/medical office.

(j)    Church or religious institution.

(k)    Personal service shop, such as, for example, a beauty shop or barbershop.

(l)    Radio, television, or household appliance service and repair.

(m)    Plumbing, heating or cabinet shop.

   (n)  Florist shop or greenhouse.

   (o)  Antique sales and service.

   (p)  Coffee house and related food service.

   (q)  Accessory buildings or uses.

  (2)  Uses permitted in the B-1 District by special exception of the Village Planning Board:

   (a)  Residential condominium, by conversion of an existing structure.

   (b)  Fraternity or sorority house.

   (c)  Boardinghouse or rooming house.

   (d)  University or college theme or group house.

   (e)  Other group dwelling.

   (f)  Public or private school.

   (g)  Parish house or convent.

   (h)  Uses deemed similar to the uses otherwise permitted in the B-1 District.

3.  *§ 325-11*  *C-1 Retail Commercial District* [1]

 A.  *Purpose*.
   The purpose of the C-1 Retail Commercial District is to:

  (1)  Delineate a central area where shopping, recreational and cultural facilities are provided for the community as a whole.

  (2)  Encourage new development in the central business district by providing for public and commercial parking areas for businesses and patrons of the district.

---

[1] *Editor's Note: Former § 325-11, B-2 Business/Commercial District, was repealed 6-27-2006 by L.L. No. 5-2006. Local Law No. 6-2006, adopted 6-27-2006, provided for the renumbering of former § 325-12, C-1 Retail Commercial District, as § 325-11; former § 325-13, C-2 General Commercial District, as § 325-12; and former § 325-14, C-3 Commercial Park District, as § 325-13.*

B. *Permitted Uses*
In the C-1 Retail Commercial District, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses: [Amended 6-27-2006 by L.L. No. 6-2006]

(1)     Uses permitted in the C-1 District:

    (a)     Financial institutions.

    (b)     Retail store.

    (c)     Personal service shop.

    (d)     Launderette.

    (e)     Restaurant or tavern.

    (f)     Theater.

    (g)     Bowling alley, billiard or pool hall.

    (h)     Hotel or motel.

    (i)     Office equipment or business machine sales and service.

    (j)     Printing shop.

    (k)     Bakery or confectionery.

    (l)     Radio, television or household appliance sales or service.

    (m)     Municipal or governmental building.

    (n)     Museum.

    (o)     Business or professional office or studio.

    (p)     Florist shop.

    (q)     Antique sales.

    (r)     Fraternal / social clubs / education / charitable or philanthropic.

    (s)     Convenience or grocery store without gas pumps.

(t)     Reserved [2]

(u)     Existing feed sale and related processing center. (*No feed sale or processing center use other than that which presently exists as of the effective date of this provision shall be permitted within the C-1 District.*)

(v)     Apartment units located on the second or higher floors in buildings located within the Canton Historic District.
        *[Amended 1-18-2011 by L.L. No. 1-2011]*

(w)     One- and two-family dwellings located outside the Canton Historic District.
        *[Amended 1-18-2011 by L.L. No. 1-2011]*

(2)     Uses permitted in the C-1 District by special exception of the Village Planning Board:

    (a)     Group dwelling, not located within the Canton Historic District.
        *[Amended 1-18-2011 by L.L. No. 1-2011]*

    (b)     Residential condominiums, with such use to be located on the second or higher floors of buildings in the Canton Historic District.
        *[Amended 12-30-2008 by L.L. No. 6-2008]*

    (c)     Fuel pumps as part of the operation of a convenience or grocery store. *[Added 1-31-2011 by L.L. No. 2-2011[3]]*

    (d)     Uses deemed similar to the uses otherwise permitted in the C-1 District (*not to include feed sale and related processing centers, which are permitted only to the extent that they exist in the C-1 District as of the effective date of this provision, but which are not otherwise permitted*). *[Amended 1-31-2011 by L.L. No. 2-2011]*

4.      § 325-18      *Schedule of Use, Area and Height Regulations*

Regulations governing lot area and lot width; front, side and rear yards; and building coverage and building height are specified in the Schedule of Use, Area and Height Regulations and in the additional regulations of Article IV, and are supplemented by the regulations of other sections of this chapter. The Schedule of Use, Area and Height

---

[2]    *Editor's Note: Former Subsection B(1)(t), regarding existing gas stations, was repealed 1-31-2011 by L.L. No. 2-2011.*

[3]    *Editor's Note: This local law also provided for the re-designation of former Subsection B(2)(c) as B(2)(d).*

Regulations accompanies and, with all explanatory matter thereon, is hereby made a part of this chapter.
*[1] Editor's Note: Said schedule is included at the end of this chapter (see attached).*

5.  § 325-41    ***Off-street parking***

A.  Off-street parking space shall be required for all buildings constructed or substantially altered after the effective date hereof, except for nonresidential uses in the C-1 Retail Commercial District. Each off-street space shall consist of at least 180 square feet with a minimum width of nine feet. In addition, space necessary for aisles, maneuvering and drives shall be provided and shall be so arranged as not to interfere with pedestrian or motor traffic on the public street or highway. Parking requirements are specified in the schedule below, which is hereby made a part of this chapter.

B.  For uses not specified, the Board of Appeals shall, on appeal, and after recommendation of the Planning Board, establish parking requirements in specific cases consistent with those specified in the schedule below.

C.  For any building having more than one use, parking space shall be required for each use.

D.  Required off-street parking in residential districts and for residential uses in any district whatsoever shall be located in the side or rear yard only.
*[Amended 3-7-1984 by L.L. No. 2-1984; 9-17-2007 by L.L. No. 19-2007]*

E.  Floor areas, for the purposes of computing parking requirements, shall be the sum of the horizontal area within exterior walls of the several floors of a building, excluding basement, cellar and attic areas used primarily for storage or service.

F.  Parking or storage of mobile homes, trailers or boats out-of-doors in residential districts shall be confined to the rear yard and not within 25 feet of any property line. *[Amended 9-17-2007 by L.L. No. 19-2007]*

G.  Overnight parking or storage out-of-doors of any vehicle licensed for commercial purposes and with more than two axles shall be prohibited in any residential district. *[Amended 9-17-2007 by L.L. No. 19-2007]*

H.  Off-street parking lots shall be designed with careful regard to orderly arrangement, topography, landscaping, ease of access and pedestrian walkways and shall be developed as an integral part of an overall site design.
*[Amended 9-17-2007 by L.L. No. 19-2007]*