UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTIAN FELLOWSHIP CENTERS
OF NEW YORK, INC.,

                        Plaintiff,

        -against-                                    **Civil Case No.:  8:19-cv-00191**
                                                                                     **LEK/DJS**
VILLAGE OF CANTON, a New York
municipal corporation,

                        Defendant.

_____

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR MANDATORY INJUNCTIVE RELIEF

_____

                                JOHNSON & LAWS, LLC
                                Attorneys for Defendant
                                648 Plank Road, Suite 204
                                Clifton Park, New York 12065
                                Tel:    518-490-6428


Gregg T. Johnson, Esq., of Counsel
April J. Laws, Esq., of Counsel

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BRIEF STATEMENT OF FACTS ..........................................................................4

LEGAL STANDARDS .............................................................................................6

     A.     Preliminary Injunction ..................................................................6

     B.     Religious Land Use & Institutionalized Persons Act ("RLUIPA").......................10

ARGUMENT..........................................................................................................12

POINT I  -   THE CONTROVERSY PRESENTED BY PLAINTIFF'S
MARCH 7TH MOTION IS NOT RIPE AND, THEREFORE,
THIS COURT LACKS JURISDICTION ............................................12

POINT II  -   PLAINTIFF HAS FAILED TO SATISFY THE PREREQUISITES
FOR OBTAINING THE "EXTRAORDINARY AND
DRASTIC REMEDY" OF INJUNCTIVE RELIEF.............................14

     A.     Plaintiff has not shown it will be irreparably harmed
without the requested injunctive relief..................................................15

     B.     Plaintiff is not substantially likely to succeed on the merits..................................17

     C.     The harm to the Village of Canton from enforcing its zoning codes
in order to promote the health, safety and general welfare of the community,
as well as regulate the character and stability of its zoning districts,
outweighs and inconvenience to Plaintiff.............................................23

     D.     The public interest would not be served by granting
the requested injunctive relief............................................................24

     E.     Plaintiff's request for declaratory relief must likewise be denied .........................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaker v. Fischer,*
2012 U.S. Dist. LEXIS 188013 (W.D.N.Y. 2012) .......................................................6, 7, 8, 9

*Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Comm'n,*
768 F.3d 183 (2d Cir. 2013)........................................................................................19

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986)..................................................................................................22, 24

*Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona,*
138 F Supp 3d 352 (SDNY 2015) ...............................................................................11

*Dow Jones & Co., Inc. v. Harrods, Ltd.,*
346 F.3d 357 (2d Cir. 2003)........................................................................................25

*Fair Hous. in Huntington Comm. v. Town of Huntington,*
316 F.3d 357 (2d Cir. 2003)......................................................................................7, 8

*FERC v. Mississippi,*
456 U.S. 742 (1982)...................................................................................................23

*Fusco v. Rome Cable Corp.,*
859 F. Supp. 624 (N.D.N.Y. 1994)............................................................................25

*Hoblock v. Albany County Bd. of Elections,*
422 F.3d 77 (2d Cir. 2005)............................................................................................8

*Jolly v. Coughlin,*
76 F.3d 468 (2d Cir. 1996).................................................................................7, 8, 9

*Life Convenant Church, Inc. v. Town of Colonie,*
2017 U.S. Dist. LEXIS 148406 (NDNY 2017) ...........................................12, 13, 19

*Mahar v. Town of Warrensburg,*
2015 U.S. Dist. LEXIS 147321 (N.D.N.Y. 2015) ......................................................7

*Metromedia v. San Diego,*
453 U.S. 490 (1981)....................................................................................................23

*Moore v. Consol. Edison Co.,*
409 F.3d 506 (2d Cir. 2005).........................................................................................7

*Murphy v. New Milford Zoning Comm'n,*
    402 F.3d 342 (2d Cir. 2005)...................................................................12, 13

*Murray v. New York,*
    604 F. Supp. 2d 581 (W.D.N.Y. 2009) ..............................................................9

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)........................................................................................15

*Rizzo v. Goode,*
    423 U.S. 362 (1976)..........................................................................................8

*Ry. Express Agency v. New York,*
    336 U.S. 106 (1949)........................................................................................23

*Third Church of Christ, Scientist v. City of N.Y.,*
    626 F.3d 667 (2d Cir. 2010)............................................................................11

*Tom Doherty Assoc., Inc. v. Saban Entm't,*
    60 F.3d 27 (2d Cir. 1995).................................................................................7

*Toplolowski v. Wrobleski,*
    2013, U.S. Dist. LEXIS 148671 (N.D.N.Y. 2013) ...........................................7

*Tri-State Video Corp. v. Town of Stephentown,*
    1998 U.S. Dist. LEXIS 1899 (N.D.N.Y. 1998) ................................................8

*Vassenelli v. City of Syracuse,*
    2012 U.S. Dist. LEXIS 29384 (N.D.N.Y. 2012) ...............................6, 7, 8, 9

*Westchester Day Sch. v Vil. of Mamaroneck,*
    504 F.3d 338 (2d Cir. 2007).............................................................11, 18, 21

*Williamson Cty. Geg'l Planning Comm'n v. Hamilton Bank,*
    473 U.S. 172 (1985)........................................................................................13

**Statutes**

42 U.S.C. § 2000cc-5(7)(B) ..................................................................................10

42 U.S.C. § 2000cc(a)(l).........................................................................10, 20, 21

42 U.S.C. § 2000cc(a)(2) .......................................................................................10

42 U.S.C. § 2000cc(a)(2)(C) ..................................................................................10

42 U.S.C. § 2000cc(b)(1) .......................................................................................11

RLUIPA .......................................................................................................*passim*

**Other Authorities**

146 Cong. Rec. S7774 (July 27, 2000) (statement of Sen. Hatch) ................................18

Village Code, Chapter 325 ..........................................................................................17

**Rules**

FRCP Rule 12 ...............................................................................................................12

FRCP Rule 57 ...............................................................................................................25

**State Statutes**

CPLR Article 78 ..........................................................................................................13

**Constituional Provisions**

U.S. Const. amend I .....................................................................................................21

# PRELIMINARY STATEMENT

Defendant, the Village of Canton, New York (hereinafter "the Village" or "Canton") by and through its counsel submit this Memorandum of Law in opposition to the March 7, 2019 Pre-Answer motion for a mandatory injunction and declaratory relief filed by Plaintiff, the Christian Fellowship Centers of New York, Inc. (hereinafter "CFC"). As reflected by the Village's submissions herewith, CFC has enjoyed and continues to enjoy the right to freely worship and hold Sunday worship services in the Village in accordance with the Village's Zoning Code as multiple churches have and continue to do (Pynchon Decl.; Ex. H). In fact, Plaintiff could hold religious services or establish a church as a matter of right in multiple zoning districts, as well as other zoning districts by "special exception" use. After almost three years of holding Sunday services for its Canton congregation at various locations within the Village, in January 2019 CFC chose to purchase property located at 25 Court Street located in the Village's single Retail Commercial District (or "C-1 District"). When Plaintiff made that January 2019 purchase from a "distressed seller" (Ducharme Decl. ¶ 16(a)), they were well aware that the C-1 District, a zoning District that comprises less than 2% of the Village (Ducharme Decl. ¶ 10), did not include church use as a permitted use. The Village's C-1 District likewise does not include a number of other secular uses as "permitted uses"; including single family homes or schools.

Plaintiff never applied for a use variance. Instead, Plaintiff asked the Village Board's to interpret the Village Code to include church use as a permitted use, while simultaneously arguing that RLUIPA compelled them (i.e. the Planning Board and the Zoning Board Appeals) to make an interpretation that was contrary to the plain language of the Code and the legislative history of such Code. When the ZBA declined to interpret the Village Code as Plaintiff requested, they promptly commenced this action and, before the Village has even answered the Complaint, filed their remarkable March 7th motion seeking a mandatory injunction.

There are several facts and circumstances germane to Plaintiff's March 7th motion, which are curiously omitted from Plaintiff's motion: For example:

- On March 4, 2019, Plaintiff's application to use their 25 Court Street property in the C-1 District for a broad range of office uses - including conducting a broad range of church business, was approved by the Village ZBA (Ex. C);

- CFC owns no fewer than five buildings, which, according to CFC's website, it uses for church services - including two large buildings (e.g. Potsdam and Madrid) within 12 miles of the Best Western Hotel where CFC admits it has been successfully holding Sunday services for months (Ducharme Decl. ⁋ 16; Ex. O);

- CFC's Canton congregation and its Pastor (Jamie Sinclair) have, according to CFC's website, held combined worship services at CFC's nearby locations, including its Madrid church (Johnson Decl. ⁋ 6; Exs. I, J);

- For 40 years, CFC reports that it successfully worshiped and grew its congregation without a central "bricks and mortar" church (Johnson Decl. ⁋⁋ 10-15; Exs. I, J);

- For most of the past 3 years, CFC's Canton congregation successfully worshiped and grew by renting different locations in the Village (Dkt. No. 1 ¶¶ 19-22); and

- With minimal effort and time, CFC can readily find a location for its March 31, 2019 church service by reaching out to prior "host facilities" and/or exploring a litany of options in and around the Village (Ducharme Decl. ⁋⁋16-17; Dalton Decl.; Pynchon Decl. ⁋⁋ 11-13; Exs. F-J, L-N, P).

By its Complaint, and now through their motion for March 7th motion seeking "emergency relief" from this Court, Plaintiff has constructed an allegation of "irreparable harm"- attempting to allege a violation of the Religious Land Use & Institutionalized Persons Act (42 U.S.C. §2000cc

et. seq.)("RLUIPA") by suggesting, or inferring, that their ability to practice their religion on Sunday, March 31, 2019 has somehow been foreclosed by the Village. As discussed fully below, Plaintiff's purported "proof" of such anticipated hardship on March 31, 2019, does not include any: clear statement about Plaintiff's inability to practice their religion; any description of the circumstances surrounding the interruption of their long standing rental arrangement with the Canton Best Western Hotel; nor any description of any efforts Plaintiff has made to secure an alternative site for their March 31st Sunday service - a practice Plaintiff has engaged in for almost three years with respect to its Canton congregation. Nonetheless, despite Plaintiff's woeful failure to present evidence that warrants the extraordinary affirmative relief Plaintiff is seeking from this Court (i.e., judicially-directed "spot zoning" before the Village has been heard in this case); the Village has developed a record for this Court that demonstrates that there is no "irreparable harm" which would warrant altering the *status quo* between the parties by issuing a mandatory injunction in Plaintiff's favor. In fact, the Village is currently assisting CFC with identifying location for March 31st (Ducharme Decl. ¶ 17; Dalton Decl.; Pynchon Decl. ¶¶ 11-13; Exs. L-N, P). As to March 31st, it is remarkable that Plaintiff's motion completely ignores the many locations within the Village that would allow for Plaintiff's worship services on that date. In other words, the "uncertainty" about where CFC will hold Sunday services on March 31st, if any, does not arise from anything the Village has done to prohibit Plaintiff from conducting its religious services. By failing to acknowledge to this Court that they have numerous available alternatives to conduct religious services throughout the Village (and remaining silent on this critical issue); Plaintiff erroneously asserts that the Village Code violates the equal terms provision of RLUIPA and Plaintiff's equal protection rights. Simply stated, Plaintiff now argues that, pursuant to RLUIPA

and the Equal Protection Clause, the Village must allow houses of worship everywhere within its boarders irrespective of the Village's Zoning Code.

It is undisputed, however, that this case does not concern any action taken by the Village that places a bar or restriction on Plaintiff's right to continue its longstanding practice of holding Sunday worship services at various locations (including within the Village). In fact, as of this writing, the Sunday worship calendar on CFC's website says that on March 31, 2019 and every Sunday during the past there months: "Sunday Services at Various Locations" (cfconline.org/events). Nevertheless, by their motion, Plaintiff seeks to have this Court declare, before the Village even answers the Complaint or conducts discovery, that its zoning code is facially unconstitutional and/or violative of RLUIPA. The practical question(s) before this Court as a result of Plaintiff's March 7, 2019 motion can be framed as follows:

> *Is Plaintiff's March 7, motion merely procedural strategy seeking to fundamentally alter the status quo between the parties by way of a pre-discovery, pre-Answer mandatory injunction?*

> *Has Plaintiff presented clear evidence that actual "irreparable harm" will befall it on March 31, 2019 and a likelihood they will succeed on the merits, that would warrant the extraordinary remedy of a mandatory injunction that disregards the Village's zoning code, fundamentally alters the status quo and provides Plaintiff the primary relief they seek in the four-week old lawsuit in which the Village has yet to be heard?*

As demonstrated herein, the Village respectfully submits that the latter question must be answered in the negative.

## **BRIEF STATEMENT OF FACTS**

While, there has been no discovery in this action and the Village has not yet filed any Answer, the following facts pertinent to Plaintiff's remarkable March 7th motion seeking a mandatory injunction are discernable from Plaintiff's verified Complaint (Dkt. No. 1) and Plaintiff's "public statements"; *see*, www.cfconline.org:

- For 45 years CFC has operated, grown and expanded as a church, independent of its ownership of physical church buildings - originating in a building constructed as "chicken coup" (Dkt. No. 1 ¶¶ 13-22; www.cfconline.org/history;

- During the last 45 years, CFC has acquired and operated at least four (4) facilities around the Village where it regularly holds Sunday services in buildings owned and/or operated by CFC, including Potsdam, New York; Madrid, New York; Moira, New York; and Richville, New York (Dkt. No. 1 ¶¶. 14, 17 and 19; www.cfconline.org);

- The building CFC owns in Potsdam (at 41 Main Street) New York, is a mere 10 miles from the Canton site which has been used by CFC for Sunday worship for six months (Dkt. No. 1 ¶ 21; Ducharme Decl. ¶ 16(c));

- The building CFC owns in Potsdam (at 41 Main Street) New York, is the location where Jamie Sinclair apparently lead several services as recently as February 24, 2019 (Johnson Decl. ¶10; Ex. I);

- CFC's church building in Madrid (at 3663 County Route 14) is located less than 12 miles from the Canton site which has been used by CF for Sunday worship services for six months - including a "combined service" in December 2018 that included CFC's Canton Congregation (Dkt. No. 1 ¶ 2; Johnson Decl. ¶ 6; Ducharme Decl. ¶ 16; Exs. I-J);

- Jamie Sinclair and CFC's Canton congregation rented space from another church in Canton from May 2016 through August 2018 (Dkt. No. 1 ¶¶ 20-21);

- Jamie Sinclair and CFC's Canton congregation "met" at SUNY Canton in or about September 2018 (Dkt. No. 21);

- Jamie Sinclair and CFC's Canton congregation rented space from the Canton Best Western Hotel from in or about September 2018 until present (Dkt. No. 1 ¶ 21);

- During the last two years and ten months during which Jamie Sinclair has reportedly been meeting and worshipping with the "Canton congregation," while CFC owned no Canton Facility, such congregation grew to include 34 members and approximately 82 attendees (Dkt. No. 1 ¶ 22);

- Since March 7th, Village officials have identified at least four (4) alternative sites that could accommodate CFC's March 31st service (Dalton Decl.; Pynchon Decl. ¶¶ 11-13; Exs. L-N, P).

Thus, the "record" evidence that has been presented to this Court demonstrates that CFC owns and operates a number of churches near the Village that Pastor Sinclair and the Canton congregation chose to use in the recent past and, there are multiple options available in the Village to accommodate CFC's Canton congregation.

## LEGAL STANDARDS

**A.     Preliminary Injunction.**  Even before the Court considers the "mandatory nature" of Plaintiff's requested injunction, any injunction at this stage is an extraordinary remedy, to be awarded only upon careful consideration of the competing interests of the parties presented in connection with an application for such relief. *Vassenelli v. City of Syracuse*, 2012 U.S. Dist. LEXIS 29384, 25-26 (N.D.N.Y. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 12 (2008) (citation omitted); *see also Amaker v. Fischer*, 2012 U.S. Dist. LEXIS 188013, 3 (W.D.N.Y. 2012) (quoting *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986) ("A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter"); *see also*,

*Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *Toplolowski v. Wrobleski*, 2013, U.S. Dist. LEXIS 148671, 4 (N.D.N.Y. 2013) (A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). "The purpose of a preliminary injunction is to prevent an irreparable injury and preserve a court's ability to render a meaningful decision on the merits." *Amaker*, *supra* at 4 (quoting *Johnson v. Newport Lorillard*, 2003 U.S. Dist. LEXIS 939, 4 (S.D.N.Y. 2003)); *Toplolowski, supra* at 4.

This Court has wide discretion in determining whether to grant or deny preliminary injunctive relief. *Mahar v. Town of Warrensburg*, 2015 U.S. Dist. LEXIS 147321, 4 (N.D.N.Y. 2015) (citing *Moore, supra* at 510); *see, also Adams*, *supra* at 3 (quoting *Polymer Techn. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994)). "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards, 'either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Mahar*, *supra* at 4 (N.D.N.Y. 2015) (quoting *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009)); *see also Fair Hous. in Huntington Comm. v. Town of Huntington*, 316 F.3d 357, 365 (2d Cir. 2003); *Tom Doherty Assoc., Inc. v. Saban Entm't*, 60 F.3d 27, 33 (2d Cir. 1995); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Vassenelli, supra* at 25.

When a plaintiff seeks an injunction staying governmental action "taken in the public interest pursuant to a statutory regulatory scheme," as in this case, however, an injunction will be

issued only if the plaintiff can show irreparable injury and meet "the more rigorous likelihood-of-success standard." *Town of Huntington, supra* at 365 (quoting *Bery v. City of New York*, 97 F.3d 689, 6954 (2d Cir. 1996) (internal quotation marks and citation omitted)); *see also Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 96-97 (2d Cir. 2005)*; Tri-State Video Corp. v. Town of Stephentown*, 1998 U.S. Dist. LEXIS 1899, 6 (N.D.N.Y. 1998); *Jolly, supra* at 473. When a movant seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs" *Rizzo v. Goode*, 423 U.S. 362, 378-9 (1976). "When . . . the injunction sought is mandatory, rather than prohibitory, such that it will alter, rather than preserve, the *status quo*, the party seeking the injunction must make a 'clear' and 'substantial' showing of a likelihood of success." *Vassenelli, supra* at 26 (quoting *MKB. v. Eggleston*, 445 F. Supp. 2d 400, 426 (S.D.N.Y. 2006) (citing and quoting *Jolly, supra* at 473) (other citation omitted)); *see also Amaker, supra* at 5 (citing *Philip v. Fairfield University*, 118 F.3d 131, 133 (2d Cir. 1997) ("[W]here an injunction is mandatory - that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act – the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from a denial of the injunction"); *Hoblock, supra at 97*. "This heightened standard is also required where the issuance of the injunction would provide the movant with substantially all the relief he or she seeks and where the relief could not then be undone, even if the non-moving party later prevails at trial." *Amaker, supra* at 5 (quoting *Philip, supra* at 133); *see also Jolly, supra* at 473. That is precisely the type of extraordinary relief Plaintiff is seeking by its motion - asking this Court to ignore the Village's Zoning Code, disregard Plaintiff's failure to even seek a use variance - and "spot zone" for Plaintiff's benefit based upon a three-page Declaration by one

of CFC's Pastors that hints at a "difficulty" they might encounter in finding a Canton location for their March 31st Sunday service.

"Irreparable [h]arm is the single most important prerequisite for the issuance of a preliminary injunction." *Vassenelli, supra* at 26 (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (citation and internal quotation omitted). Although the alleged violation of a constitutional right can satisfy a plaintiff's burden to demonstrate irreparable harm (*Jolly, supra* at 473), "the Second Circuit has explained that to satisfy the irreparable-harm requirement, the movant must demonstrate that without a preliminary injunction, he will suffer an 'injury that is neither remote nor speculative by actual and imminent and that cannot be remedied by an award of monetary damages.'" *Murray v. New York*, 604 F. Supp. 2d 581, 584 (W.D.N.Y. 2009) (quoting *Hoblock, supra* at 97) (quoting *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)); *see also Vassenelli, supra* at 26 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003).

In this case, a plaintiff's threadbare proffer "suggesting" a possible constitutional deprivation[1] is insufficient to demonstrate a likelihood of success on the merits. *See, Amaker, supra* at 6 (citing *Conti v. Goord*, 59 Fed. Appx. 434 (2d Cir. 2003) (affirming denial of preliminary injunction seeking specific medical treatment when district court had no evidence before it to support a finding of deliberate indifference); *Purdie v. Supervisor*, 2010 U.S. Dist. LEXIS 2715, at *4 (N.D.N.Y. 2010) (plaintiff failed to submit proof or evidence to demonstrate a likelihood of success on the merits; plaintiff's affidavit requesting injunctive relief was insufficient); *Phelan v. Sullivan*, 2011 U.S. Dist. LEXIS 56320, *4 (N.D.N.Y. 2011) ("plaintiff's

---

[1] Of course, a mere inconvenience - (e.g., scheduling or short travel) associated with engaging in Sunday worship services does not constitute a constitutional deprivation. In that regard, it is significant that Mr. Sinclair's March 7, 2019 Declaration stops short of stating that his ability, or CFC's ability, to actually worship on March 31, 2019 *has been* or *will be* curtailed.

allegations, standing alone, are not sufficient to entitle him to injunctive relief.")).  In light of the Village's showing (Ducharme Decl. ¶ 17; Dalton Decl.; Pynchon Decl. ¶¶ 11-13; Exs. L-N, P), it is clear that such an extraordinary remedy is not justified.  For the following reasons, Plaintiff's motion for a preliminary or permanent injunction must be denied.

**B.    Religious Land Use & Institutionalized Persons Act ("RLUIPA").**    Through its Complaint, Plaintiff claims that the Village violated two provisions of RLUIPA, the "substantial burden" provision and the "equal terms" provision; Plaintiff's arguments in their motion for a injunctive relief focuses primarily on the latter.  The "substantial burden" provision limits land use regulations that substantially burden religious exercise:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution - (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental   interest.

42 U.S.C. § 2000cc(a)(1).  RLUIPA's substantial burden provision only applies if one of three jurisdictional tests is met.  42 U.S.C. § 2000cc(a)(2).  Under the "individualized assessment" test, the substantial burden provision applies when the alleged substantial burden "is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).  Under RLUIPA's substantial burden provision, land use regulations that impose a substantial burden on religious exercise are subject to strict scrutiny.  42 U.S.C. § 2000cc(a)(1).  "Religious exercise" includes "[t]he use, building, or conversion of real property for the purpose of religious exercise."  42 U.S.C. § 2000cc-5(7)(B).  The Second Circuit has explained a substantial burden as "government action that directly coerces the religious institution

to change its behavior." *Westchester Day Sch. v Vil. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).

The "equal terms" provision directs that land use regulations treat religious institutions on equal (not the same) terms with secular institutions:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

42 U.S.C. § 2000cc(b)(1). Courts in this Circuit have held that "there are four fundamental elements of an Equal Terms claim: (1) the plaintiff must be a religious institution; (2) subject to a land use regulation; that (3) treats the religious institution on less than equal terms; with (4) a nonreligious institution." *Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona*, 138 F Supp 3d 352, 441 (SDNY 2015). "As far as how to prove an 'equal terms' claim, however, '[d]ivision exists' among the Federal Circuits as to 'whether the . . . provision invariably requires evidence of a 'similarly situated' secular comparator . . . and, where such evidence is necessary, on what ground the comparison much be made.'" *Id.* (citations omitted). Thus far, the Second Circuit has declined to define "the precise outlines of what it takes to be a valid comparator under RLUIPA's equal-terms provision." *Third Church of Christ, Scientist v. City of N.Y.*, 626 F.3d 667, 669 (2d Cir. 2010). Contrary to Plaintiff's conclusory arguments, it is undisputed that in addition to CFC, there are eight (8) other active churches - of various denominations - that have and continue, to operate in the Village (Pynchon Decl. ¶¶ 9-10). Moreover, neither the legitimate land use definitions that define the C-1 District, nor the much larger Districts that permit church use (e.g., B-1, B-2, R-1 and R-2) are facially unlawful/unconstitutional. Therefore, Plaintiff is unable to support its motion for a Preliminary Injunction, nor is it able to show that the Village violated any terms of RLUIPA.

**ARGUMENT**

**POINT I**

**THE CONTROVERSY PRESENTED BY PLAINTIFF'S MARCH 7TH MOTION
IS NOT RIPE AND, THEREFORE, THIS COURT LACKS JURISDICTION**

As will be addressed in Defendant's forthcoming Rule 12 motion and/or Answer, this Court

lacks jurisdiction to decide the pending motion due to Plaintiff's failure to exhaust available

administrative remedies. It well-settled that "[r]ipeness is a doctrine rooted in both Article III's

case or controversy requirement and prudential limitations on the exercise of judicial authority."

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).[2] In land use disputes,

including those alleging RLUIPA claims, ripeness requires a plaintiff to "obtain a final, definitive

position as to how it could use the property from the entity charged with implementing the zoning

regulations." *Murphy*, 402 F.3d at 348, *citing, Williamson Cty. Geg'l Planning Comm'n v.

Hamilton Bank*, 473 U.S. 172, 186 (1985); *see, also, Life Convenant Church, Inc. v. Town of

Colonie*, 2017 U.S. Dist. LEXIS 148406 *25-26 (NDNY 2017)(wherein Your Honor dismissed

the Complaint as unripe noting that because the plaintiff "has not alleged facts showing that

Defendants have 'dug in [their] heels and made clear that [its] applications will be denied'…the

futility exception does not apply, and its claims are unripe"). The Second Circuit has further

opined as follows:

> Four considerations, all of which motivate our decision today, undergird prong-one
> ripeness. First, as just explained, the *Williamson County* Court reasoned that
> requiring a claimant to obtain a final decision from a local land use authority aids
> in the development of a full record. *See id*. at 187. Second, and relatedly, only if a
> property owner has exhausted the variance process will a court know precisely how
> a regulation will be applied to a particular parcel. *See id*. at 190. Third, a variance

---

[2] In *Murphy*, the District Court granted a permanent injunction. On review, the Second Circuit vacated
the injunction because it found that the homeowners prematurely commenced the suit, such that their
claims were never ripe for judicial intervention. The Second Circuit held that, until a variance and
appeals process was exhausted and a final, definitive decision from local zoning authorities was rendered,
the dispute remained a matter of unique local import over which the District Court had lacked
jurisdiction.

might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes.

*Id.* The main consideration for the finality requirement is that with only a final decision from a municipality "will a court know precisely how a regulation will be applied to a particular parcel," *Murphy*, 402 F.3d at 348.

In this action, for the reasons stated below, this Court will be unable to find that, for the purposes of ripeness, Plaintiff "obtain[ed] a final, definitive position" from the Village when it issued merely a finding for a request for interpretation of the use of 25 Court Street (Ex. B). It is undisputed that the Petitioners have not explored all avenues available to them and, therefore, the motion for injunctive relief should be denied. For example, Plaintiff has not even applied for a use variance concerning its proposed use of 25 Court Street as a Church and Plaintiff never appealed (either by a CPLR Article 78 proceeding or request to the Village ZBA) the Planning Boards initial denial of their "special exception" application (Ducharme Decl. ¶ 13; Stuntz Aff. ¶ 13). This Court should follow the precedent of the Second Circuit (as well at this Court's holding in *Life Convenant Church*) and find that this Court lacks jurisdiction as the motion (and Complaint) are premature since no final resolution has been made on the subject property. *Murphy, supra.*; *Williamson, supra.* Moreover, the March 4, 2019 determination made by the Village ZBA allowed Plaintiff to use the property for office use for their Church/religious operations (Ducharme Decl. ¶ 15; Stuntz Decl. ¶¶ 11-12). Aside from Plaintiff's remarkable omission this fact from their March 7th motion, it is significant that this positive final determination *permits* Plaintiff to use the 25 Court Street property seven (7) days we week for office uses "including" many of the religious "ministries" Plaintiff's application described during its successful "office use application." As to their requests to use the Court Street property as a church where Sunday worship services are held, Plaintiff has only sought a request for a Code interpretation of such use, i.e., whether the definitions

of the C-1 district include churches for use as a matter of right. Although Plaintiff later sought a "special exception" before the Village Planning Board, which was denied, Plaintiff never appealed the planning board's decision or challenged it with an New York Article 78 proceeding. Simply stated, Plaintiff merely requested a classification determination, and has have never filed for a building permit, applied for a use variance, and/or requested a change in the zoning code to allow for the proposed use at 25 Court Street – relief which is still available to Plaintiff, but not yet explored before filing the lawsuit or the instant motion. Since there has been no final resolution regarding Plaintiff's proposed or intended use of the property, the instant motion is clearly premature and should be denied.

## POINT II

### PLAINTIFF HAS FAILED TO SATISFY THE PREREQUISITES FOR OBTAINING THE "EXTRAORDINARY AND DRASTIC REMEDY" OF INJUNCTIVE RELIEF

Assuming, *arguendo*, that this does Court not dismiss the motion for injunctive relief for lack of jurisdiction, Plaintiff has failed to satisfy the prequisites for obtaining the "extraordinary and drastic remedy" of preliminary injunctive relief as asserted against a municipality. It should be noted initially that Plaintiff's interpretation of RLUIPA does not comport with Second Circuit law.[3] Contrary to Plaintiff's assertions, the Second Circuit has never held that RLUIPA eviscerates zoning, nor has the Second Circuit outlawed defining different "uses" under RLUIPA - which is essential for any land use planning and zoning – as Plaintiff seeks this Court to believe. Plaintiff's fundamental misconception of RLUIPA is found in their suggestion that because some forms of "assembly" are permitted in the Village's tiny C-1 District, and since a church service also involves assembly, they must be permitted to pursue a church use within the C-1 district under RLUIPA

---

[3] In fact, Plaintiff consistently cites to non-binding authority outside of the Second Circuit.

and/or the EPC.  Notably, Plaintiff cites no controlling authority for this remarkable assertion on which they base their facial challenge.  If Plaintiff's "assembly" reasoning were applied, then logic would dictate that RLUIPA eviscerates any zoning definition that defines a "perfect use" that could include any activity a church or religious organization also engage in.  Simply stated, Plaintiff's interpretation of RLUIPA is based on what Plaintiff wants/wishes the statute said, not the actual text of the law nor controlling precedent.

### A.   Plaintiff has not shown it will be irreparably harmed without the requested injunctive relief.

Plaintiff's failure to present actual evidence that they will be irreparably harmed (as distinguished from possibly inconvenienced) absent the granting of the requested injunction (as distinguished from the inference about the uncertainty of their March 31st service) requires denial of Plaintiff's motion seeking same. A movant for a preliminary injunction against a municipality must present facts that show a "real and immediate" threat of substantial, irreparable harm before a federal court will intervene. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Here Plaintiff merely state in conclusory fashion that as of March 7th they have "nowhere to meet on Sunday March 31st" and that the "Church continues to face weekly uncertainty about its ability to meet as a congregation because the Best Western Hotel where the Church currently has rented space during the past six months does not always have room for the Church" (Dkt. No. 14-3 ¶¶4-5).  Yet, Plaintiff fails to inform the Court that CFC owns multiple other church buildings - two of which are within 12 miles of the Canton Best Western Hotel (Ducharme Decl. ¶16).  Plaintiff failed to inform this Court that for almost three years - while Plaintiff says its Canton congregation was growing - they held Sunday services in as many as three different locations in Canto (Johnson Decl. ¶ 6; Exs. I-J) - as well as the combined December 2018 Christmas service at their large Church in Madrid, New York just 11.5 miles outside of Canton (Ex. J).

In fact, the most remarkable aspect of Plaintiff's "proffer" is what it does *not include* and what Pastor Sinclair did not state in his brief March 7th Declaration. For example, Pastor Sinclair:

- Does not say *when* he learned that the church could not meet at the Best Western Hotel on March 31, 2019, or *why*?

- Does not say what steps, if any, he and/or the CFC has taken to explore other locations for March 31st service.

- Fails to identify which "ministries" or "community service" mentioned in his Declaration ( §§ 6-7), if any, cannot be conducted in CFC's offices at 25 Court Street which the Village approved on March 4, 2019;

- Fails to identify what meetings, advertising or signage, if any, cannot be pursued at CFC's offices at 25 Court Street which the Village approved on March 4, 2019;

While Mr. Sinclair's Declaration suggests that "attendance and membership remains stagnant" (Sinclair Decl. § 7), he provides no details about: When such stagnation began? When the Canton Congregation was growing? How has the CFC membership evolved during the past three years? What membership (i.e. CFC in general or the Canton congregation) is he referring to? What is the relationship, if any, between the Canton congregation changing locations and its membership or attendance numbers? Or, any other facts that could support the conclusion that he invites this Court to reach. Therefore, the only threatened injury in this case is that as a result of CFC's private arrangement with the Best Western Hotel, the Church cannot meet at the Hotel on March 31st and that sometimes, the Hotel cannot accommodate them. Conversely, although the Village does not have the burden of proof - the Village has nonetheless shown that there are a number of establishments within and near the Village that can accommodate CFC's worship service on March 31, 218; some of which Plaintiff has utilized previously (Ducharme Decl. ¶¶ 16-17; Dalton

Decl.; Pynchon Decl. ¶¶ 12-13).  In addition, CFC has offered no explanation as to why they cannot hold a March 31st service at any of the other churches they own, or schedule a combined service as they have done in the past.  Thus, Plaintiff has failed to show, and the record does not establish, that CFC will be irreparably harmed without injunctive relief.

**B.      Plaintiff is not substantially likely to succeed on the merits.**

Plaintiff is not entitled to a preliminary or permanent injunction because they cannot prove a substantial likelihood of success on the merits of any of the claims raised in the Complaint, much less to support their motion for injunctive relief.  Plaintiff's claim that the Village Zoning Code violates the RLUIPA's "equal terms" provision is misguided; this is clear when considering the regulatory purpose of the Village's Zoning Code, as well as the zoning criteria for the C-1 (commercial) district where Plaintiff seeks to hold assemblies for worship.  As noted previously, the legitimate regulatory purpose of the Village Code is to "promote the…general welfare of [the] community [and to] protect the character and maintain the stability of residential, university, business, commercial and manufacturing areas within the Village and to promote the orderly and beneficial development of such areas." Village Code, Chapter 325, Zoning §325-2 (Ex. A).  The regulatory purpose of the zoning code is to likewise "prohibit uses…that are incompatible with the character of development or permitted within specified zoning districts." *Id.*  Prior to purchasing the 25 Court Street property, CFC was aware that there were no churches operating in the C-1 district.[4]  Moreover, Plaintiff would almost certainly have been allowed to locate and operate a church had they purchased property within the B-1 and B-2 (business) districts (as a matter of

---

[4] As noted previously, the regulatory purpose of the Village zoning code for the Commercial District is to create "a central area where shopping, recreational and cultural facilities are provided for the community as a whole." *Id.* at §325-11.

right)[5] and/or in the R-1 or R-2 (residential) districts (through special exception) (*see, Id.* §325-8) (Ducharme Decl. ⁋ 10).

Among the list of permitted uses allowed as a matter of right in the C-1 District which comprises only 2% of the Village are the following: retail stores; restaurants or taverns; theaters; bowling alleys, billiard or pool halls; hotels or motels (which could include a restaurant or tavern on-site); convenience stores (without gas pumps); and fraternal or sociable clubs. *Id.* at §325-11(b) (Ducharme Decl. 10). RLUIPA does not prohibit local zoning or land use planning which, at its very essence, involves 'use" definitions and distinctions between uses. *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 355 (2d Cir. 2007) (stating that "RLUIPA leaves it to each state to enact and enforce land use regulations as it deems appropriate, so long as the state does not substantially burden religious exercise in the absence of a compelling interest achieved by the least restrictive means."); *see also*, 146 Cong. Rec. S7774, 7776 (July 27, 2000) (statement of Sen. Hatch) ("This Act [RLUIPA] does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay."). What is certain is that a church is not a commercial enterprise; a church is not in the business of selling items or libations to the public. By contrast, retail stores, restaurants, hotels and convenience stores, only to name a few, focus on selling goods, lodging and/or libations to the general public and are for-profit entities. When considering Plaintiff's request for an interpretation of the code that permitted the citing of a church as a "permitted use" in the C-1 District, the Village's Zoning Board reviewed the regulatory purpose

---

[5] The regulatory purpose of the Village zoning code for the Business District is to create an "area which is appropriate for public and private offices, churches, institutions and medium-density residential use by virtue of the relationship to the central business district, major streets, present uses and character of development." *Id.* at §325-10.

of the Village's zoning code; the plain language of the code and considered the impact that a church may have on current and future commercial endeavors in the commercial District (C-1) (Ex. B). In light of the content-neutral language of the Village Code, the tiny percentage (2%) of the Village covered by the C-1 District, the much larger Districts permitting and facilitating church use (e.g., B-1, B-2, R-1 and R-2 Districts) which cover almost 40% of the Village - Plaintiff's facial challenge must be rejected (Ducharme Decl. ¶ 10; Exs. A, D, F).

As this Court recently held, "[m]erely reciting the phrase 'facial challenge' does not transform [Plaintiff's] as applied challenge into a facial one. Nor does it excuse [Plaintiff] from the finality requirement." *Life Convenant Church, Inc. v. Town of Colonie*, 2017 U.S. Dist. LEXIS 148406 (N.D.N.Y. 2017). Similarly, even should this Court consider the merits of Plaintiff's motion, they have not - and cannot - present evidence to support their facial challenge to the Village's zoning code. Here, the Village's interpretation that churches are not allowed in the C-1 District as a matter of right does not violate the "equal terms" provision of RLUIPA since churches are not similarly situated to the allowed uses in that district (i.e., restaurants, hotels, theaters, convenience stores, etc.) because churches are not similarly situated to those commercial ventures under the regulatory purpose of the of the Village's zoning code. Moreover, the Village has made clear that it would treat a religious institution (i.e., church) no differently than it would treat a secular institution (i.e., school or library) in the C-1 District, as those institutions would equally affect the character and development of the commercial district in a way that would upset the regulatory intentions of the Village's zoning code. Simply stated, Plaintiff has not presented evidence that "unequal treatment" by the Village Code (as opposed to "different" treatment) and, as such, cannot meet its *prima facie* burden regarding its "unequal terms" claim. *See, Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir.

2013). Thus, since Plaintiff is unable to meet its burden in support any "equal terms" violation under RLUIPA, its motion for a preliminary injunction must be denied as a matter of law.

Moreover, to the extent that Plaintiff claims that the VZB's determination substantially burdened the church, this argument is also flawed. Under RLUIPA, Plaintiff has not and cannot present evidence that the Village Code presents "in a manner that imposes a substantial burden on the religious exercise of a person, including a religious … institution" 42 U.S.C. 2000cc (a)(1). In this regard, Courts in this Circuit have made clear that the mere existence of a zoning regulation and requiring a religious organization to comply with same, does not constitute a substantial burden under RLUIPA. Instructive here is the case *Wesleyan Methodist Church of Canisteo v. Village of Canisteo* (792 F. Supp. 2d 667 (W.D.N.Y. 2011). In that case, the church sought to build a larger facility in a light industrial zoning district that did not, as a matter of right, permit churches. *Id.* at 669. When the church submitted its proposal to the Village, it was denied on the basis that the proposed changes to the property would alter the aesthetics of the entire light industrial district. *Id.* The church then applied for a variance, which was denied in light of the church's inability to show sufficient hardship. *Id.* at 670. When making this decision on the variance application, the zoning board determined that a variance was not appropriate since the church created its own "hardship" when it attempted to build in a district that did not allow churches as a matter of right. *Id.* The church then applied for a special use permit, which was also denied, and the zoning board again denied the church's appeal. *Id.* at 670-71.

Following the denials of the request for a variance and special use permit – two options that have not yet been sought by Plaintiff in the instant matter – the church filed suit and alleged that the Village's zoning code imposed a substantial burden on its religious exercise without

furthering a compelling governmental interest.[6] *Id.* at 671.  In addressing whether a zoning code can impose a substantial burden, the District Court cited to the Second Circuit for the notion that substantial burden claims involving zoning codes rarely prevail, since zoning regulations that are neutrally imposed are not considered "substantial" under RLUIPA. *Id.* at 673, *citing, Westchester Day Sch. v Vil. of Mamaroneck,* 504 F.3d 338, 350 (2d Cir 2007).[7]  Further, the Court found that the fact that the church had alternative options by which it could expand on its current premises also undermined its claim that the zoning code imposed a substantial burden. *Id.* at 674.  Similarly, in the instant matter, not only does the Plaintiff have numerous options for worship service, they have provided this Court with no reasons why the March 31st cannot be held at one of the nearby churches that Plaintiff owns, operates and/or has utilized to host their Canton congregation as part of a "combined service" like CFC previously chose to do (Exs. I, J).  Moreover, Plaintiff has not, and cannot, offer any evidence or controlling legal authority that establishes a "substantial burden"

---

[6] Compare the Complaint in the instant matter: "The Village's actions have further imposed a substantial burden on the Church in violation of RLUIPA, 42 U.S.C. 2000cc(a)(l) and continue to unlawfully restrict the Church's free exercise of religion and freedom of speech as protected by the First Amendment to the United States Constitution." Dkt. No. 1 ¶6.  "The Village cannot prove that its actions are supported by a compelling governmental interest or that they are the least restrictive means of furthering any governmental interest, let alone a compelling one." *Id.* at ¶93.

[7] In *Westchester Day School*, the Second Circuit opined as follows: "Yet, when the denial of a religious institution's application to build is not absolute, such would not necessarily place substantial pressure on the institution to alter its behavior, since it could just as easily file a second application that remedies the problems in the first. As a consequence, as we said when this case was earlier before us, rejection of a submitted plan, while leaving open the possibility of approval of a resubmission with modifications designed to address the cited problems, is less likely to constitute a 'substantial burden' than definitive rejection of the same plan, ruling out the possibility of approval of a modified proposal. *Westchester Day Sch.,* 386 F.3d at 188.  Of course, a conditional denial may represent a substantial burden if the condition itself is a burden on free exercise, the required modifications are economically unfeasible, or where a zoning board's stated willingness to consider a modified plan is disingenuous. Id. at 188 n.3. However, in most cases, whether the denial of the application was absolute is important; if there is a reasonable opportunity for the institution to submit a modified application, the denial does not place substantial pressure on it to change its behavior and thus does not constitute a substantial burden on the free exercise of religion." *See, Westchester Day Sch.,* 504 F3d at 349-50.

- particularly in light of the Village's history of hosting numerous active churches and facilitating "church use" as part of the land use planning in substantial portions of the Village.

Finally, Plaintiff has failed to show that the Village, when rendering a zoning interpretation at the request of Plaintiff, violated the Equal Protection Clause. In fact, Plaintiff (perhaps purposely) neglects to inform this Court that, as of March 4, 2019, the Village ZBA affirmatively voted to allow Plaintiff to use the property as a professional office wherein a broad range of church-related services would be offered to church members (Ex. C). Clearly, this further supports that the Village's interpretation of the zoning code and language of the zoning code were (and continue to be) content-neutral. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). In other words, the Village has allowed Plaintiff to perform all related professional services, except for assemblies for worship since that would, as noted above, have (or could have) an adverse effect on other commercial ventures in the C-1 district.

Similarly, as this Court is aware, in the *Renton* case, Playtime Theaters, Inc., challenged a city prohibition of "adult" theaters within a certain distance from other businesses in the district. *Id.* at 44. When determining that the ordinance was not aimed at the content of the activity (in this case speech), but rather its "secondary effects" on the community at large, the Court determined that the ordnance was not content-based and sought to suppress expression, but rather sought to prevent crime and protect economic stability. *Id.* at 47-48. In this case, even if this Court were to determine that the zoning code affects Plaintiff religious land use, it does so only in a matter to regulate the "secondary effects" of such land use. Here, the zoning code clearly states that the regulatory purpose in the C-1 district is to provide the community with "a central area where shopping, recreational and cultural facilities are provided for the community as a whole." *Id.* at §325-11. Therefore, as applied by the Village, Plaintiff is unable to show they were treated

differently on the basis of their religion, or that the zoning code is anything but content-neutral. Thus, Plaintiff is unable to support its motion for preliminary injunctive relief.

**C.** **The harm to the Village of Canton from enforcing its zoning codes in order to promote the health, safety and general welfare of the community, as well as regulate the character and stability of its zoning districts, outweighs and inconvenience to Plaintiff.**

With its motion, Plaintiff is not simply seeking to maintain the *status quo*, they are seeking to transform it. This Court should not compel the Village to usurp its Village Codes, especially prior to the parties having an opportunity to conduct discovery. In contrast, Plaintiff's only alleged injury in this case is the "uncertainty" about the location for a Sunday service on a particular date. Importantly, the alleged uncertainty was not caused by anything this Village did - but rather a development in the private arrangements negotiated between CFC and the Best Western Hotel - during the past six (6) months. As noted herein, Plaintiff has made no attempt to explain whether they have also frustrated all alternate meeting locations on March 31st within the Village of Canton. In fact, Defendant's preliminary searches have revealed that a number of alternate locations are available for Plaintiff to hold regular church services, including services on March 31, 2019. Accordingly, any alleged "inconveniences" to Plaintiff does not outweigh Defendant's right to enforce its zoning code or provide an evidentiary basis for the extraordinary relief they are seeking.

The United States Supreme Court has recognized that municipalities have broad authority to regulate land use since it is a quintessential function of local government. *FERC v. Mississippi*, 456 U.S. 742 (1982). To that end, municipalities may enact zoning ordinances for issues such as the promotion of safety, or even the aesthetics of the community. *Metromedia v. San Diego*, 453 U.S. 490 (1981). Therefore, if a municipality finds that a particular zoning ordinance will advance a substantial governmental interest, Courts are cautioned not to overturn said ordinances unless they are "palpably false." *Ry. Express Agency v. New York*, 336 U.S. 106, 109 (1949). Finally, a

municipality need not produce evidence to justify is zoning ordinances, so long as whatever evidence it relies upon "is reasonably believed to be relevant to the problem that the [municipality] addresses" *City of Renton v. Playtime Theaters*, 475 U.S. 41, 51-52 (1986). There can be no doubt that consistent with RLUIPA, the Village can legitimately make zoning distinctions designed to promote a "commercial: downtown district in a small part of the City - even if the permitted commercial uses include some amount of "assembly."

As indicated above, and through the Declarations and exhibits submitted herein, the Village has shown that it carefully considered Plaintiff's applications for code interpretation. Conversely, Plaintiff has failed to submit any compelling evidence in support of their motion, save for irrelevant stray posts from non-parties on websites and Mr. Sinclair's legal conclusions. Furthermore, Plaintiff has failed to disclose to this Court that on March 4, 2019, the Village granted them permission to use 25 Court Street for Office Space which enables Mr. Sinclair to pursue many of the activities he references in his threadbare Declaration seven days a week. Additionally, it is undisputed that CFC has multiple different locations, including two in the immediate Canton area where they can hold combined services, but Plaintiff has not attempted to offer evidence why that would be a hardship (especially in light of the voluntary "combined" service CFC held in Madrid in December 2018). Plaintiff presents no evidence to this Court, but merely offers speculation that Defendant treated Plaintiff "differently" than secular commercial enterprises. For these reasons, the harm to the Village should a preliminary injunction be granted, far outweighs any potential inconvenience to Plaintiff.

**D.    The public interest would not be served by granting the requested injunctive relief.**

It is in the public interests of the residents of the Village, as well as any current or future commercial ventures in the C-1 Commercial District, to have the ability to rely upon the

specification of the Village Code. Plaintiff does not even attempt to demonstrate how requiring the Village to violate its own zoning code and "spot zone" for Plaintiff would not adversely affect the greater public interest, including future commercial ventures and general commerce for the Village. In contrast, there is a strong public interest in applying the Village zoning codes to ensure that, within the C-1 District, there is a central area where shopping, lodging, dining and other recreational facilities are provided to the community as a whole.

**E.      Plaintiff's request for declaratory relief must likewise be denied.**

This Court has held that "Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy." *Fusco v. Rome Cable Corp.*, 859 F. Supp. 624, 628 (N.D.N.Y. 1994). The Second Circuit held that, when entertaining a proper motion for declaratory judgment, District Courts may consider the following: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). For the same reasons this Court should deny Plaintiff's motion for a mandatory injunction (*supra*), this Court should deny Plaintiff declaratory judgment.

Dated:     March 18, 2018

Respectfully submitted,

JOHNSON, & LAWS, LLC

Gregg T. Johnson (506443)