IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTIAN FELLOWSHIP CENTERS OF NEW YORK, INC. a New York not-for-profit corporation, | ) ) ) ) | CASE NO. 8:19-cv-00191-LEK-DJS |
| Plaintiff, | ) ) ) | Honorable Judge Lawrence E. Kahn |
| VILLAGE OF CANTON, a New York municipal corporation, | ) ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF INJUNCTIVE RELIEF

### I. The Village misunderstands the nature of this case and the injunctive relief sought.

The Village's response seems almost entirely focused on the fact that the Church is unable to worship at the Best Western hotel on March 31, 2019.[1] The Village devotes much ink to examining the Church's locations in parts of the State and places where the Church previously rented in the Village or could potentially rent on March 31, 2019. All of this, however, misses the point and fails to address the substantive arguments advanced by the Church.

This case is not about the Church being able to worship at a hotel on one particular week; it is about the Church's immediate civil and constitutional right to worship at its own property at 25 Court Street. The Church does not argue that it is entitled to injunctive relief simply because it does not currently have a place to meet in the Village on March 31st. The Church is entitled to injunctive relief because, "it is suffering irreparable harm as a result of the Village's denial of its civil rights," and because the Village is liable under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et. seq.* ("RLUIPA"). Church's Memo, p. 5. Even if the

---

[1] The reason why the Church cannot worship there is because the conference room has been booked by another group, a fact attested to by the Village's exhibits.

1

Church could worship at the hotel on March 31st, it would still be entitled to an injunction because the Village continues to violate its statutory and constitutional rights to worship at its own property. This argument will be further developed in sections III (B) & (C) below.

The Village also argues that this Court should not issue an injunction before the parties have conducted discovery. Village's Memo, p. 4. But there is no need for discovery because the Church is seeking injunctive relief from the Village's zoning code which *facially* violates its civil rights. The issues presented herein are simply questions of law, only requiring this Court to analyze the zoning code in light of statutory and constitutional requirements. Discovery is unnecessary to determine whether the Village's zoning code facially violates the Church's civil rights to worship at its property.

In addition, the Village, beginning on page 20 of its brief, wades into an extended discussion on the Church's Substantial Burden claim (Count III). While the Church's Verified Complaint contains three separate RLUIPA claims, the Church's motion only seeks injunctive relief on its Equal Terms claim (Count I) and Equal Protection claim (Count II). The Church, therefore, will not respond to the Village's arguments which go beyond the scope of the present motion.

## II. The Church's motion for injunctive relief is ripe for review.

The Village argues this matter is not ripe for review because the Church has not exhausted administrative remedies, such as filing for a variance. Village's Memo, p. 12. The Village's argument fails to understand the implication of facial challenges.

First, the Church has sufficiently pled and advanced facial challenges. See e.g. Compl. at ¶¶ 2, 3. Indeed, the Church alleges that the violations herein are "evident on the face of the zoning code" and that the zoning code violates the Church's rights "on its face" Church's Memo, pp. 9,

22. The Court need look only to the face of the Village's zoning code to discover that religious assemblies are treated on an unequal basis with nonreligious assembly uses.

Second, facial challenges are ripe for review without filing for a variance. "[T]here is no need for a party actually to apply or to request a permit in order to bring a facial challenge to an ordinance (or parts of it) . . . . "*MacDonald v. Safir*, 206 F.3d 183, 189 (2d Cir. 2000). The same is true in the context of RLUIPA. See e.g., *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 595 (S.D.N.Y. 2013)( Holding that "'facial' challenges to regulation[s] are generally ripe the moment the challenged regulation or ordinance is passed."). Courts have made it clear that "*Williamson County*'s finality principles do not apply to facial claims that a given regulation is constitutionally infirm." *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1359 (11th Cir. 2013). Because the Church argues that the zoning code facially violates its rights, this matter is ripe for review.

### III. All of the factors necessary for injunctive relief weigh in favor of the Church.

#### A. The Church is likely to succeed the merits of its claims.

##### i. The Village's zoning code violates the Equal Terms provision of RLUIPA.

The Church is likely to succeed on its Equal Terms claim because: (i) the Village prohibits religious assemblies from the C-1 district while freely permitting comparable nonreligious assemblies; (ii) the Village only permits religious assemblies, as of right, in one (1) of 14 districts, while allowing nonreligious assemblies widely throughout the Village; (iii) the Village imposes greater acreage requirements on religious assemblies than on nonreligious ones; and (iv) state liquor laws cannot be used to discriminate against religious assemblies in violation of federal law. The Village offers no substantive response to arguments (ii)-(iv). As far as the Church can discern, the Village offers only three responses to the Equal Terms claim.

3

First, the Village defers to the authority it is granted as a municipal body. It maintains that it has a "legitimate regulatory purpose" to promote the general welfare, maintain stability, promote development, and to define "uses" within its jurisdiction. Village's Memo, pp. 17-18. But these general maxims add nothing to the analysis here. No one disputes that municipalities possess such authority and neither the Church's Verified Complaint nor its injunctive motion attack the Village's general ability to legislate.

Second, the Village argues that the "church is not a commercial enterprise; a church is not in the business of selling items or libations to the public." *Id.* at p. 18. Likewise, the Village contends that "churches are not similarly situated to those commercial ventures under the regulatory purpose of the Village's zoning code." *Id.* at p. 19. But these arguments fail when one considers the full range of uses already permitted in the C-1 district. The Village permits a number of uses that are not commercial including municipal and government buildings, museums, and uses described as "Fraternal/social clubs/education/charitable or philanthropic." Compl. at ¶ 54. The Village has no basis to permit fraternal assemblies, social clubs, or charitable/philanthropic uses in the district and then deny religious assemblies the right to operate in same district on the basis that a religious assembly is not commercial.

Similarly, many uses permitted in the C-1 district bear no relation to the Village's stated purpose for the district which is to "create central areas where shopping, recreational and cultural facilities are provided for the community as a whole." *Id.* at ¶ 53. Yet, the Village permits uses such as financial institutions, personal service shops, launderettes, offices, printing shops, and more. Thus, the Village's "commercial district" is one in name only. See *River of Life Kingdom Ministries v. Vill. of Hazel Crest, Ill.*, 611 F.3d 367, 374 (7th Cir. 2010)(*en banc*)("But should a

municipality create what purports to be a pure commercial district and then allow other uses, a church would have an easy victory if the municipality kept it out.").

Third, the Village makes repeated references to the C-1 district as compromising only 2% of the Village. But the relevant question here is whether the Village treats religious assemblies on unequal terms in the district. The size of the district does not matter. And by asserting that the C-1 district comprises only 2% of the Village, the Village has placed itself in the difficult position of having to explain why religious assemblies, which are only permitted *as of right* in the B-1 district, are limited to an area that small. The C-1 district is approximately the same size as the B-1 district. **Exhibit A**. Thus, the Village has effectively conceded that religious assemblies are only freely permitted in about 2% of the Village (and only if they locate on a minimum of three (3) acres). This is in stark contrast to nonreligious assemblies that are freely permitted widely in Canton without three (3) acre requirements.

The Village argues that religious uses are allowed in "much larger Districts permitting and facilitating church use (e.g., B-1, B-2, R-1, R-2) which cover almost 40% of the Village" (Village's Memo, p. 19) and that the Village already has several churches. *Id.* at 11. But this is wrong on many levels. First, there is no "B-2" district. One might think this is merely a typo but this reference to an imaginary district appears in more than one place in the Village's brief.

Second, the figure that religious assemblies can meet in 40% of the Village is misleading. Religious assemblies can only meet in the R-1 and R-2 districts if they first find a three (3) acre property and undergo a discretionary application process to obtain "special permission" (in religious parlance — municipal grace). Religious assemblies *are not* freely allowed in the R-districts. The Village provides no justification for why religious assemblies must maintain a minimum lot of three (3) acres while nonreligious assemblies do not. In *Chabad of Nova, Inc. v.*

5

*City of Cooper City,* religious uses were required to maintain lots of 40,000 square feet in residential zones. 575 F. Supp. 1280, 1291 (S.D. Fla. 2008). The court held that the city violated RLUIPA, noting that the disparate lot and frontage requirements on religious uses required them to "aggregate an average of 3-4 properties" and were subject to significantly higher costs to locate in residential zones. *Id.* While the lot requirement for religious assemblies in *Chabad* was 40,000 square feet, the requirement for religious assemblies in the Village of Canton is 130,680 square feet! The 40% figure, therefore, is entirely deceptive.

Third, the number of existing religious assemblies in the Village is irrelevant in determining whether the Village unconstitutionally restricts *new* religious groups. As stated in *Chabad*, "the number of existing religious assemblies in the City is not evidence regarding the availability of reasonable opportunities for the entry of *new* religious assemblies under the current zoning ordinances . . . . the City continues to provide inadequate opportunity for new religious assemblies to locate by imposing unreasonable restrictions on their purchase of property." *Id.* By providing ample places for nonreligious assemblies in the Village, while unduly restricting religious ones, the Village treats religious assemblies on unequal terms with nonreligious ones.

### ii. The Village has violated the Church's right to Equal Protection.

The Equal Protection clause requires that the government treat similarly situated assembly uses equally. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Church has demonstrated that it is similarly situated with other nonreligious and religious uses in the C-1 district and that the Church is not treated equally. Once again, the Village fails to respond to the substantive arguments made by the Church. Instead, the Village's response here is that its zoning code is "content-neutral." Village's Memo, p. 22. But not only is that not the proper analysis here, once the Village categorizes a use based on religious purposes, it is no longer

content neutral anyway. Because the Church is not treated equally with similarly situated assembly uses, and the Village offers no substantive response to the contrary, the Church has succeeded on its Equal Protection claim.

**B. The Church is facing irreparable harm.**

As established above, the Village's zoning code, which prohibits the Church from engaging in religious exercise at its own property, infringes on the Church's rights under RLUIPA and the Equal Protection clause. This alone suffices to establish an irreparable harm because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In fact, because RLUIPA specifically authorizes injunctive relief (42 USCS § 2000cc-2(a),(f)), the Church need not even establish specific irreparable injury to obtain a preliminary injunction. See e.g., *United States v. Jones*, 4:09-CV-00547-EJL, 2010 WL 11655549, at *1 (D. Idaho Jan. 4, 2010)("When an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction.").

Courts that have discussed irreparable harm in the RLUIPA context have set forth certain key principles. Illustrative is the court's analysis in *Opulent Life Church v. City of Holly Springs*, which supplies a textbook explanation on irreparable harm in these types of cases:

> "Most basically, Opulent Life has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment and RLUIPA rights. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' . . . ('When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'). This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise. . . . *see also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F.Supp.2d 766, 795 (D.Md.2008) ( '[T]he infringement of one's rights under RLUIPA constitute[s] irreparable injury.' . . . ."). 697 F.3d 279, 295 (5th Cir. 2012)(internal citations omitted).

Although the Church had already established irreparable harm, it chose to also highlight "particular" harms which flow from the Church's inability to use its property and which required the Court's immediate attention. Only one of these is the fact that Church has no place to meet in the Village on March 31st. Church's Memo, p. 20. But the Village ignores the Church's main argument, including the legal principles in the previous paragraph, and fixates almost entirely on whether the Church can worship elsewhere on March 31st. But the irreparable harm here is being "Prevented by the zoning code from using the property as a permanent place of worship." *Id.* The Village's longwinded harangue into when the Church knew it could not meet on the 31st, or what steps the Church has taken to find alternate space, or specifics into church attendance, demonstrates a failure to understand the arguments in this case.

### C. The balance of the harms favors the Church.

"[T]he greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). Indeed, "once the moving party establishes a likelihood of success on the merits, the balance of harms 'normally favors granting preliminary injunctive relief' because 'injunctions protecting First Amendment freedoms are always in the public interest.'" *Id.* at 666. The Church has shown a likelihood of success on the merits, enough even to obtain not only a preliminary injunction but a permanent one.

The Village, on the other hand, has demonstrated no harm should an injunction be granted. The Village already permits, by right, numerous noncommercial assembly uses in the C-1 district. And though the Village has made much of the State liquor law, the Church has explained why such laws cannot be used to discriminate against religious uses in violation of federal law and that, in any case, none of the five properties potentially affected by it sell liquor

anyway. Tellingly, the Village makes no attempt to justify the use of a state liquor law to violate the Church's federal and constitutional rights. The Village has not demonstrated any harm to it should this Court enter an injunction.

Instead, the Village responds with several irrelevant arguments. The Village, for instance, argues that the Church is seeking to "usurp" the Village zoning code and that the Village has "broad authority" to regulate land use. Village's Memo, p. 23 The Church is not seeking to "usurp" anything and neither its Verified Complaint nor injunctive motion disputes the Village's authority to regulate. But while the Village has regulatory authority, it cannot use it to regulate in a manner that violates civil and constitutional rights. The Village's contention that "only alleged harm in this case is the 'uncertainty' about the location for a Sunday service on a particular date" is categorically false. *Id*. The harm here, and the basis for injunctive relief, is the Village's unconstitutional prohibition of the Church using its property for religious worship.

The Village also argues that the Church can meet in Potsdam or Madrid and that it has granted the Church the ability to use its property for office use. *Id*. at p. 24. The Church, however, has the right to worship in Canton. The Village cannot absolve itself of liability simply by the telling the Church it can go worship in another city. See *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 76 (1981)(Ban on live entertainment could not be justified on the ground that nude dancing was available in areas outside city limits). In addition, the main purpose of the Church is to congregate for worship and the hearing of God's word. The Village's retort that the Church can have office use is non-responsive to the facial violations in the zoning code.

### D. The public interest will be served by the granting of this injunctive relief.

The Village claims that the public has an interest in seeing the C-1 district advance the stated purpose of being an area for shopping and recreational activities. But as explained above, and in

the Church's Memorandum, the Village, contrary to its stated purpose, already permits numerous uses which are at odds with the Village's stated goal, including noncommericial and tax exempt uses with activities similar to those of the Church. The Village, therefore, cannot claim to be advancing a public interest by treating religious assembly uses on unequal terms.

In contrast, "'injunctions protecting First Amendment freedoms are always in the public interest . . . . This principle applies equally to injunctions protecting RLUIPA rights because, as discussed, RLUIPA enforces the First Amendment and must be construed broadly.'" *Opulent Life*, at 298. See also, *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005)("Vindicating First Amendment freedoms is clearly in the public interest."); *KH Outdoor, LLC v. Trussville*, ("the public has no interest in enforcing an unconstitutional ordinance." 458 F.3d 1261, 1272 (11th Cir. 2006)). Because upholding constitutional and civil rights are in the public interest, this factor weighs in favor of the Church.

## CONCLUSION

The Church has demonstrated that all four factors weigh in its favor. Somehow, the Village has managed to file over 300 pages with this Court without actually discussing the central issues in this case. The Village (i) does not provide any justification to limit religious assemblies to locate, as of right, in only one district ; (ii) does not provide any justification for the restrictive three (3) acre requirement on religious assemblies; (iii) does not attempt to defend it use of a liquor law to discriminate against the Church; (iv) does not distinguish, or even cite, to the main RLUIPA cases in this matter (*Digrugilliers, Lighthouse Inst. for Evangelism, Third Church of Christ*); (v) and provides no substantive RLUIPA case analysis whatsoever. Therefore, the Church respectfully requests that this Court grant its Motion for Preliminary or Permanent Injunction and Declaration as a Matter of Law and the relief requested therein.

Respectfully submitted this 21st day of March, 2019.

                                              **CHRISTIAN FELLOWSHIP CENTERS OF NEW YORK, INC.**

By: /s/ John W. Mauck                              By: /s/ John Collins

John W. Mauck, Esq.*                              John K. Collins
IL Bar No. 1797328                               NY Bar No. 2879609
Sorin A. Leahu, Esq.*                            **Silver & Collins**
IL Bar No. 6315515                               44 Court Street
**Mauck & Baker, LLC**                         Canton, NY 13617
One N. LaSalle St., Suite 600              Telephone: 315-386-8506
Chicago, Illinois 60602                    Facsimile: (315) 386-8507
Telephone: 312-726-1243             jcollins@silverattorneys.com
Facsimile: 866-619-8661
jmauck@mauckbaker.com
sleahu@mauckbaker.com

*Pro hac vice*